# January Term, 1918

## No. 8232.

### WESTERN INVESTMENT & LAND COMPANY *v.* FIRST NATIONAL BANK OF DENVER.

1. PRINCIPAL AND AGENT—*Ratification.* If the principal, upon partial acquaintance with the attending facts, and without full inquiry, deliberately ratifies the act of the agent he will not be heard to question the effect of his action on the ground of want of knowledge.

The testimony examined and held to warrant a finding of ratification.

2. WITNESS—*Competency.* A defendant who has suffered a default, may, under Rev. Stat. sec. 7284, be called and examined by plaintiff.

3. EVIDENCE—*Competency.* A witness is not to be interrogated as to the ownership of a chattel where his testimony must involve a construction of the facts proved.

4. ——— *Declarations of Agent as to His Authority,* made by the general manager of a corporation, as part of the transaction in question, he having power to make contracts on behalf of the corporation, are admissible.

5. ESTOPPEL—*By Conduct.* Where a corporation as the consideration for its endorsement of a promissory note receives an article of personal property, retains and uses it in its business, all question of the authority of the agent making the endorsement is eliminated. The corporation in such case, being estopped to deny its liability on its endorsement, irregularity in the face of the paper is not to be called to the attention of the jury, as notice to the endorsee, as want of authority of the agent making the endorsement.

6. INSTRUCTIONS—*Refusal,* giving the substance, is not error.

*Error to Denver District Court, Hon. Geo. W. Allen, Judge. En banc.*

Mr. HOWARD J. CLARK, Mr. L. WARD BANNISTER and Mr. LEROY MCWHINNEY, for plaintiff in error.

Mr. N. WALTER DIXON, Mr. HARRY E. KELLY and Mr.

CHARLES H. HAINES, for defendant in error.

Opinion by Mr. Justice Teller.

THE defendant in error brought suit against the plaintiff in error on a promissory note upon which the latter appeared as indorser. Verdict for plaintiff and judgment accordingly.

The note was executed by one Macarthy to the defendant below, he being at the time the president and manager of defendant company, was indorsed in the name of said company, and delivered to one Colburn in payment for an automobile. The note was subsequently, and before maturity, transferred to the plaintiff. Presentment and protest were duly made.

The defense was and is that the note was never delivered to the defendant, and that it never indorsed the same. It is alleged in answer that the indorsement in the name of the company was made by said Macarthy, who was also the maker of the note, of which fact Colburn had knowledge when he received the note; that Macarthy had no authority to execute and deliver to defendant the said note; that it never owned the note; and that the automobile was purchased by Macarthy for his own use, and not for the defendant.

There was evidence as to the defendant's business, of which Macarthy was in sole charge in this state; of the contract of purchase of the automobile; of the use of cars in the business; of the knowledge of some of the directors of such use; of advertising by the company that it used automobiles in its business of selling lands; of differences between Macarthy and his father-in-law, who owned more than one-half of the stock of the defendant company; of a transfer of Macarthy's stock to his father-in-law; of a charge of $10,005.95 against Macarthy on the company's books; of a resolution by the directors, and the stockholders, approving and confirming all the acts of Macarthy as president; and of his ceasing to have any connection with the defendant.

The court submitted to the jury the question whether Macarthy purchased the automobile for himself individually, or as manager for the company, and for it; also, if purchased for the company, whether Macarthy had authority to make the purchase and execute the note in suit to pay therefor.

The jury was instructed that they should find for the defendant unless they found that Macarthy had authority to purchase an automobile for the company, and did so purchase the automobile in question; and that he had authority to indorse and deliver the note in suit; or that his act in so doing was ratified by the company.

We can not agree with plaintiff in error that there is no substantial evidence from which authority on the part of Macarthy either to buy the automobile, or to indorse the note for the company, may be inferred. From the evidence above recited the jury might reasonably find that Macarthy had authority to buy the automobile, and to indorse the note as he did.

Neither do we think that the court erred in refusing to give an instruction "that there can be no ratification of an unauthorized act done in corporation's behalf, unless the act is known to the ratifying authority, and is, therefore, approved."

The requested instruction stated a general rule, to which, however, there is a well-known exception, within which the case at bar falls.

We are dealing here not with acts from which a ratification may be inferred, but with an *express* ratification.

It is well settled that if a principal deliberately ratifies upon such knowledge as he has, assuming such risk as there may be in failing to make full inquiry, he is bound, and can not avoid the effect of his act on the ground of want of knowledge. *Ehrmantraut v. Robinson,* 52 Minn. 333, 54 N. W. 188; *Stokes v. Mackay,* 19 N. Y. S. 918, 64 Hun. 639; *Wilder v. Beede,* 119 Cal. 646, 51 Pac. 1083; *Kelley v. N. H. Ry. Co.,* 141 Mass. 496, 6 N. E. 745; Mechem on

Agency, Sec. 393, *et seq.* (2nd Ed.) ; and Ewell's Evans on Agency, p. 82.

The testimony of J. K. Gilcrest, who owned more than one-half of the stock, was that:

"In the settlement it was included that Macarthy turned the stock back. By settlement I mean when the new books were opened and an accounting made with him and myself. The ratification resolution was a part of the settlement. The agreement was that if Macarthy would turn over the stock to me the corporation would ratify all of his acts as president and general manager to that date. The transaction was entirely carried out between me and Macarthy and the company, and Macarthy turned over his stock to me. Macarthy's indebtedness to me was paid in the form of a company indebtedness to me, pursuant to that agreement."

Reading the resolution of ratification, with its all inclusive terms, in the light of this testimony, it can not be said that the jury was not justified in finding that the purchase of the automobile, and the indorsement and delivery of the note, were ratified and approved. It is a fair and natural inference from the facts in evidence that the defendant company, as a consideration for the surrender by Macarthy of his stock, agreed to become responsible for all that he had done. The language of the resolution of ratification fully justifies this conclusion.

It also appears that Macarthy was charged with $10,005.95, and the witnesses for defendants now disclaim all knowledge of the items of that indebtedness. They can not explain the charge.

We can not say that the jury might not properly infer that the sum so charged was itself a consideration for the company's assumption of liability for Macarthy's acts, known or unknown.

Objection is made to the testimony of defendant Macarthy—call by the plaintiff for examination under section 7284, R. S. 1908—on the ground that he had already suffered default; and cases from Wisconsin and Minnesota are

cited to support the objection. In the Minnesota case, *Suter v. Page,* 64 Minn. 444, 67 N. W. 67, it was held not error to reject such testimony, the court declining to determine whether or not the trial court, in its discretion, might not have admitted the testimony.

In *O'Day v. Meyers,* 117 Wis. 192, 94 N. W. 48, the court gives as a reason for holding the testimony inadmissible the fact that the other side has no right to cross-examine the witness. Under our practice a witness thus called may be examined by both sides, and the reason which apparently induced the holdings mentioned does not exist here.

Clearly, if a party called as an adverse witness appears to the trial court not to be adverse, he should not be held to come within the statute in question; and, as the Minnesota case recognizes, the matter should be left largely to the discretion of the court.

We do not think it was error to admit the testimony to which the objection is made, especially as the witness was fully cross-examined.

It is further objected that the trial court erred in striking out the following question and answer:·

"Q. Did it (the company) ever own the limousine machine? A. No."

Counsel cite authorities to support the statement "that a witness may always answer a question as to the ownership of personal property."

The statement is too broad, and is not supported by the cases cited. Where the question involves a fact clearly within the knowledge of the witness, and does not call for the expression of an opinion upon facts proven, it is admissible. But where the testimony involves the construction of the facts proved, it is not competent. *Nicolay v. Unger,* 80 N. Y. 54. In *Pichler v. Reese,* 171 N. Y. 577, it is said:

"There is a distinction between asking a witness to testify to a fact, the existence of which depends upon an inference from a collection of facts  *  *  *  and asking

him to testify to a fact which is necessarily within his knowledge."

Here the witness was called upon to testify to a fact of which he had only such knowledge as might be acquired from the facts proved, and the testimony was not admissible.

Complaint is made also that the witness Colburn was permitted to repeat the declarations made to him by Macarthy as to the latter's authority in behalf of the defendant; and that Macarthy was allowed to testify to the same declarations.

This testimony, it is said, violates the rule that an agent's authority can not be established by his own declarations. But that is not this case. That Macarthy was the president and manager of the company is beyond dispute. The answer admits that he was president of the company, and the by-laws, in evidence, make the president the general manager, with power to make contracts on behalf of the corporation.

The testimony was concerning declarations of one whose agency was established, and was competent as a part of the transaction in controversy. *R. E. Lee Co. v. O. & G. S. & R. Co.,* 16 Colo. 118, 26 Pac. 326.

There was evidence from which the jury might properly find that the automobile was bought for the defendant, was used in its business, and became its property. That being so, the defendant received a consideration for its indorsement, and is bound by it. *Pelton v. Spider Lake Sawmill Co.,* 132 Wis. 221, 112 N. W. 29, 122 Am. St. 963; *Lyon Potter Co. v. Bank,* 85 Fed. 120, 29 C. C. A. 45; *Whitney Arms Co. v. Barlow,* 63 N. Y. 62, 20 Am. Rep. 504; *Hayes v. Galion Gas Co.,* 29 Ohio St. 340; and *Bradley v. Ballard,* 55 Ill. 413, 8 Am. Rep. 656.

This eliminates all question as to right of Macarthy to execute or indorse the note for the company.

This fact, that is, that the defendant is estopped to deny its liability on the indorsement, fully meets the objections to the first three instructions, which are alleged to be bad

because they ignore the proposition that the irregularity on the face of the note was notice to the indorsee.

The objection to instruction number 5 is that the jury were permitted to take into consideration implied or apparent authority in the president and manager to indorse the note. We see no merit in the objection.

Nor do we find error in the refusal of instructions. The substance of some of them was given, and the others do not correctly state the law as applied to the facts.

Finding no error in the record, the judgment is affirmed, and the former opinion is withdrawn.

*Judgment Affirmed.*

Mr. Justice Allen not participating.
Mr. Justice Scott dissents.