**R & D DISTRIBUTING CORP. and Ronald D. Stead, Plaintiffs,**

v.

**HEALTH–MOR INDUS., INC., Defendant.**

No. 98–40371.

United States District Court, E.D. Michigan, Southern Division.

Oct. 31, 2000.

Stephen P. Afendoulis, Varnum, Riddering, Grand Rapids, MI, Kevin A. Rynbrandt, Varnum, Riddering, Grand Rapids, MI, Martha S. Sullivan, Squire, Sanders, Cleveland, OH, for Defendant.

Richard Gurbst, Squire, Sanders, Cleveland, OH, for Plaintiff.

### *ORDER*

GADOLA, District Judge.

Before the Court is Defendant/Counterclaim Plaintiffs Health–Mor Industries's ("HMI" or "Defendant") motion for summary judgment. For the reasons stated below, the Court grants in part and denies in part this motion.

## I BACKGROUND

Plaintiff/Counterclaim Defendants, R & D Distributing Corporation and Ronald M. Stead ("Plaintiffs") bring an action for breach of contract. Plaintiff R & D Distributing Corporation is incorporated under the laws of Michigan and does business within Michigan. Plaintiff Stead is a Michigan resident who sold and distributed, in Michigan and Ohio, the vacuum cleaners HMI produced. HMI is incorporated under the law of Delaware, has its principal place of business in Ohio, and does business in Michigan.

Plaintiffs seek lost profits and post-termination commissions. The crux of Plaintiffs' complaint is that, from 1991 to 1997,

HMI violated its alleged contractual obligation not to sell parts and competing vacuum cleaners in Plaintiffs' exclusive territory. (Opp.[1] at 8.)

The essence of HMI's motion for summary judgment is that Plaintiffs adduced no evidence from which a reasonable factfinder could conclude that the parties had a contract making Plaintiffs an exclusive distributor after 1990 and, in the alternative, Plaintiffs have alleged no facts from which a reasonable factfinder could conclude that HMI is legally obligated to provide them with prospective profits. (Mot.[2] at 13.)

## II LEGAL STANDARD

The Court will grant a motion for summary judgment if the evidence demonstrates that there is no genuine issue as to any material fact, and that the movants are entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must read the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *See Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.1979). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The Court's function is not to weigh the evidence and determine the truth of the matters asserted, "but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The Court may hear this case because there is diversity jurisdiction over the cause of action.

## III ANALYSIS

### A. Choice of Law

■ The Court must first decide what state's substantive law applies to this controversy. Federal courts exercising diversity jurisdiction apply the choice-of-law rules of the states in which they sit. *See Cook v. Little Caesar Enterprises, Inc.*, 972 F.Supp. 400, 406 (E.D.Mich.1997) (citations omitted). Michigan law generally allows parties to choose what state's law will govern their contract. *See id.* (citation omitted). Where the parties make no such choice, the Court must apply Michigan law unless a rational reason for doing otherwise exists. *See Hall v. General Motors Corp.*, 229 Mich.App. 580, 582 N.W.2d 866, 868 (1998).

In deciding whether such a reason exists, the Court must first determine whether a foreign state has an interest in having its law applied. If not, the presumption in favor of applying Michigan law cannot be overcome; if so, the Court must decide whether Michigan's interests dictate that Michigan law be applied despite a foreign state's interests. *See id.*

■ In this case, the parties disagree about whether a contract covering the relevant period, 1991 to 1997, existed at all. Although two contracts the parties signed in 1989 and 1990 contained a choice-of-law provision favoring Illinois law, neither party pleads that the choice of law provisions should govern this case. Plaintiffs plead that Michigan law should govern the case, (Opp. at 4), and HMI seems to acquiesce (Mot. at 7 n. 1). The Court concludes, therefore, that the parties have not chosen another state's law to govern their contract.

---

1. "Opp." refers to "Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment," filed on July 13, 2000.

2. "Mot." refers to "Defendant/Counterclaim Plaintiff HMI's Motion for Summary Judgment," filed on June 16, 2000.

Turning to the question of whether the presumption in favor of Michigan law is outweighed by a foreign state's interest in applying its law, the Court notes that both Plaintiffs are residents of Michigan, which gives the state an interest in providing a forum. Assuming there was a contract between the parties, the written offers preceding the contract were sent to Plaintiffs in Michigan, where Plaintiffs allegedly accepted the offers and formed a contractual bond. This further militates in favor of applying Michigan law. *See Detroit Diesel Corp. v. Lane–Smith,* 39 F. Supp.2d 852, 858 (E.D.Mich.1999) (reasoning that the validity of a marriage contract is determined by the "law of the place where the contract is made") (citation omitted).

On the other side of the coin, Ohio arguably has an interest in applying its law because HMI's principal place of business is in Ohio. Neither party has argued that any other state's law should govern this case, however, and the factors in favor of applying Michigan law are weighty. The Court will thus apply Michigan law to thus cause of action.

## B. Contract Formation

Plaintiffs make three arguments in favor of the existence of a contract between them and HMI. First, Plaintiffs argue that a brochure explaining HMI's "Career Development Program," ("CDP"), which HMI allegedly "published in approximately 1980,"[3] constitutes a "contractual document" making Plaintiffs an "Exclusive Distributor." (Opp. at 5, 10.) Second, Plaintiffs argue that HMI's oral statements and course of conduct support the existence of a contract. (Opp. at 10–11.) Third, Plaintiffs argue that they at least had an implied-in-fact contract with HMI that granted them an exclusive distributorship. (Opp. at 11.)

Defendant first argues that there was no contract because the CDP was not a contract between HMI and Plaintiffs. (Mot. at 5–6.) Second, HMI argues that two one-year contracts it made with Plaintiffs in 1989 and 1990 contained a merger clause that would have made any contract under the CDP with Plaintiffs inoperative before 1991. (Mot. at 6–7.) Third, HMI argues that Plaintiffs cannot show an implied contract. (Mot. at 8–9.)

■ In determining whether parties have assented to a contract, the Court must apply an objective test, asking whether the expressed words of the parties and their visible acts would lead a reasonable person to conclude that they mutually assented to be bound. *See Rood v. General Dynamics Corp.,* 444 Mich. 107, 507 N.W.2d 591, 598 (1993). Plaintiffs assert that the original CDP constituted a contract between them and HMI. The CDP was addressed, however, "TO ALL EXCLUSIVE FILTER QUEEN DISTRIBUTORS." (Mot. Ex. B. at 1.) That would indicate that, even if the CDP were a contractual offer, it would be an offer made to existing "EXCLUSIVE FILTER QUEEN DISTRIBUTORS." Plaintiffs base their claim to being exclusive distributors on the "contract" created by the CDP. But if Plaintiffs were not already exclusive distributors when they allegedly received the CDP, the CDP was not even addressed to them and thus could not have constituted an offer.

Even if Plaintiffs could overcome that hurdle, the CDP contains few indicia of a contract. It contains no space for execution by the parties, and no indication of intent by HMI to be bound in a contractual relationship with any individual who reads the documents.

Assuming, *arguendo,* that the CDP had created a contract between the parties in the 1980s, Defendant argues that its two

---

**3.** HMI published a revised CDP in the 1990s, but Plaintiffs allege that they never intended to be bound by that document. So the revised CDP, which carried a disclaimer denying that it could create contractual liability, does not affect Plaintiffs' contractual theories. (Opp. at 6–7.)

one-year contracts with Plaintiffs in 1989 and 1990 contained merger clauses that would have destroyed that contract before the breach that Plaintiffs allege began in 1991. The later of the two merger clauses states that

> [t]his agreement supersedes and cancels any and all previous understandings, agreements, and contracts between the parties relating to any and all products to be sold in the Territory. It expresses the complete and final understanding of the parties in respect thereto and may not be changed in any way except by an instrument in writing signed by both parties.

(Mot. Ex. D at 9).

 Absent fraud or mistake, a merger clause is operative and acts "just like a general release of all antecedent claims." *UAW–GM Human Resource Center v. KSL Recreation Corp.*, 228 Mich.App. 486, 579 N.W.2d 411 415–18 (1998). Plaintiffs have provided no evidence of fraud or mistake surrounding the 1990 contract. Thus, even if Plaintiffs had a contractual right to exclusive distribution under the CDP, the 1990 contract and its merger clause extinguished that right. Although the 1990 contract does limit HMI's right to sell vacuums in Plaintiffs' territory, (Mot. Ex. D at 4–5), the 1990 contract terminated on December 31, 1990. (Mot. at 7; Ex. D at 5.)

 The Court now turns to Plaintiffs' argument that HMI's oral statements and course of conduct are consistent with the existence of a contract. To survive summary judgment, Plaintiffs must adduce "evidence [from which] a clear intention to create a contract" could be inferred. *Rood*, 507 N.W.2d at 602; *see also Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880, 884–85 (1980) (reasoning that an employer's oral statements coupled with its policy manuals could create an employment contract). Plaintiffs aver that when Mr. Stead confronted HMI with the latter's alleged violation of the exclusive-distribu-

tion contract, the latter admitted "that it was violating the agreement and in fact tried to appease R & D by offering to pay commission overrides on sales that were in violation" of the alleged contract. (Opp. at 11; Aff. of Ronald D. Stead at ¶ 10.) This allegation, if true, could lead a reasonable juror to conclude that the parties had a contract.

 Plaintiffs support this averment with the sworn affidavit of Ronald D. Stead. For an affidavit to create an issue of material fact that would defeat a motion for summary judgment, it must: (1) be made on personal knowledge; (2) set forth facts as would be admissible in evidence; and (3) demonstrate that the affiant is competent to testify as to the matter contained in the affidavit. *See Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir.1993); *cf. Virginia Transformer Corp. v. P.D. George Co.*, 932 F.Supp. 156, 159 (W.D.Va. 1996) (noting that "plaintiff is entitled to have the credibility of his evidence presumed" on a motion for summary judgment (internal citation omitted)). In this case, Mr. Stead made his statements based on his personal knowledge of his relationship with Defendant, he set forth admissible facts (the alleged admission of a party-opponent), and he showed that he is competent to testify as to the matters contained in the affidavit by swearing that he was intimately involved in the disputed matters of this case. The Court thus concludes that Plaintiffs have adduced evidence from which a reasonable juror could conclude that they had an exclusive contract with Defendant. Summary judgment is thus inappropriate as to this issue.

 Plaintiffs' alternative argument is that the parties had an implied-in-fact contract. An implied-in-fact contract exists when the parties have not manifested an intent to be bound by explicit words, but a contract may be "gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances

surrounding the transaction." *City of Auburn v. Brown,* 60 Mich.App. 258, 230 N.W.2d 385, 389 (1975). This issue is a question of fact. *See id.*

▮ Plaintiffs have adduced that they exercised rights as an exclusive distributor from 1983 to 1997, (Opp. at 5; Aff. of Ronald D. Stead at ¶ 3). Plaintiffs support this averment with the sworn affidavit of Ronald D. Stead. For reasons discussed above, therefore, a reasonable juror could "gather[ ] by implication" that the parties had an implied-in-fact contract that gave Plaintiffs the exclusive rights to sell HMI products in their territory. Plaintiffs also aver that HMI acknowledged this arrangement by paying Plaintiffs when HMI violated the alleged agreement. A reasonable juror who finds Plaintiffs believable could credit this version of events. For this alternative reason, summary judgment is inappropriate as to the issue of contract formation.

### C. Right to Post-termination Commissions

▮ Plaintiffs base their claim to future commissions solely on the alleged contract created by their agreement to the CDP, which allegedly "entitled [them to] an Exclusive Distribution to lifetime commissions." (Opp. at 12–13.) For the reasons stated above, the CDP that Plaintiffs allegedly received and accepted in the 1980s could not have created a contract binding after 1990, and probably could not have created a contract in the first instance. On that ground, the Court grants HMI's motion for summary judgment as it pertains to Plaintiffs' alleged right to prospective commissions

Accordingly, this Court being fully advised in the premises,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [Docket Entry 49] is **GRANTED** as it pertains to Plaintiffs' claim for post-termination commissions, and **DENIED** as it

pertains to the rest of Plaintiffs' claim for breach of contract.

**SO ORDERED.**