Ronald SIPES and Robert Ashworth, Plaintiffs,

v.

KINETRA, L.L.C., Defendant.

Nos. CIV 00–40059, CIV 00–40185.

United States District Court,
E.D. Michigan,
Southern Division.

April 4, 2001.

902

Leonard K. Kitchen, Leonard K. Kitchen Assoc., Dexter, MI, for plaintiffs.

Martin T. Wymer, Duvin, Cahn, Southfield, MI, for defendant.

### OPINION AND ORDER

GADOLA, District Judge.

Before the Court are Defendant's motions for summary judgment. The Court held a hearing on this matter on March 28, 2001. For reasons set forth below, the Court grants Defendant's motions as to each Plaintiff.

## I. BACKGROUND

The salient question in this case is whether Defendant promised Plaintiffs equity in Defendant upon its sale.

Plaintiffs in these consolidated cases are Messrs. Ronald Sipes and Robert Ashworth, both of whom were executives of Defendant during the events in question. Each Plaintiff brings the following causes of action: (1) breach of contract; (2) promissory estoppel; (3) repudiation or anticipatory breach of contract; and (4) negligent misrepresentation. On June 20, 2000, this Court ordered Plaintiffs' cases consolidated because common issues of fact and law existed in each case.

Defendant is a joint venture that Electronic Data Systems Corporation ("EDS") and Eli Lilly and Company ("Lilly")

formed in February, 1998. EDS owned 51% of Defendant and Lilly owned 49%. Before they began working for Defendant, Mr. Sipes was an employee of EDS and Mr. Ashworth was an employee of one of Lilly's subsidiaries.

After negotiating with EDS's Jeff Kelly, who later became a board member of Defendant, Mr. Sipes began working on Defendant's behalf in February, 1998. Until the summer of 1998, however, Mr. Sipes remained officially an EDS employee so that he would increase his benefits under EDS's retirement plan. According to Mr. Sipes's deposition testimony, Mr. Kelly had promised him orally that part of Mr. Sipes's compensation would be .75% equity in Defendant "in the event that we can get this thing to an [initial public offering] or something." (Sipes Dep. at 84:9–11.) When he began working for Defendant, however, Mr. Sipes had no documentation concerning his compensation or any equity interest in Defendant. (Sipes Dep. at 94–98.)

After speaking in January, 1998 with Mr. Timothy Hargarten, who would become the Chief Executive Officer ("CEO") of Defendant, Mr. Ashworth began working for Defendant in May, 1998. Mr. Ashworth remained an employee until May, 1999, however, of the Lilly subsidiary so that he too could augment his retirement benefits. On June 1, 1999, Mr. Ashworth began to work officially for Defendant.

On August 3, 1998 and June 1, 1999, respectively, Mr. Sipes and Mr. Ashworth each received a letter from, and signed by, Mr. Hargarten ["Hargarten letters"]. It is upon their respective letters that each Plaintiff contends that Defendant made an enforceable promise to provide Plaintiffs equity in Defendant upon Defendant's sale. (Pl. Br. at 11; Ex.s 7 and 10.) In relevant part, each letter reads as follows:

> While [the following] conditions/commitments represent the basic terms of your employment, it is subject to completion and approval of a Kinetra Employment Agreement. . . .
>
> EQUITY: Equity in Kinetra would be granted to you with terms consistent with those given to other members of the Kinetra Executive Committee and at a level of [.75% for Mr. Sipes and 1% for Mr. Ashworth] of Kinetra provided you are employed at Kinetra both at the time equity is granted and at the date it is exercisable.

Mr. Sipes signed an "employment agreement" with Defendant on August 11, 1998. Mr. Ashworth signed an "employment agreement" with Defendant on June 1, 1999. Each Plaintiff signed his respective "employment agreement" after he received the Hargarten letter. Both of those documents contained an identical integration clause in paragraph seventeen, which stated that "[t]his agreement constitutes our entire agreement, and supersedes and prevails over all other prior agreements, understandings, and representations by or between the parties, whether oral or written, with respect to the subject matters herein." Neither of these "employment agreements," however, delineates the compensation that either Plaintiff would receive, nor is either signed by a representative of Defendant.

Defendant is incorporated in Delaware and has its principal offices in Colorado. Both of the Hargarten letters at issue were presented in Colorado. As Plaintiffs stated during the hearing, it would be fair to say that, although both Messrs. Sipes and Ashworth traveled extensively for Defendant, both performed more of their employment duties in Colorado than in any other state. Mr. Ashworth lived outside of Michigan at all times relevant to this case. Mr. Sipes, however, had a home in Michigan during the relevant time period for this case, and he worked out of his Michi-

gan home approximately one day per week. Mr. Sipes also had a company car that he drove in Michigan. Defendant does business throughout the United States, and has had at least on contract in Michigan.

Defendant was sold in January, 2000. Neither Plaintiff received any equity interest in Defendant upon that sale. Each Plaintiff then brought suit. This Court exercises diversity jurisdiction over this case.

## II. LEGAL STANDARD

The Court will grant a motion for summary judgment if the movant demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must read the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *See Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.1979). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The Court's function is not to weigh the evidence and determine the truth of the matters asserted, "but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

Toward that end, once the moving party carries the initial burden of demonstrating that no genuine issue of material fact is in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated:

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. 2505(citations omitted); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. The non-moving party, accordingly, must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd*, 1991 WL 49687, 929 F.2d 701 (6th Cir.1991).

## III. ANALYSIS

### A. Choice of Laws

The Court must decide at the outset what state's law governs this case. Defendant argues that the Court must adjudicate the contract claims under Colorado law. Plaintiffs contend that the Court must apply Michigan law to the contract claims. All parties agree that Michigan law applies to the tort claim.

Federal courts exercising diversity jurisdiction apply the choice-of-law rules of the states in which they sit. *R & D Distrib. Corp. v. Health–Mor Indus., Inc.*, 118 F.Supp.2d 806, 808 (E.D.Mich. 2000) (Gadola, J.). Michigan law generally allows parties to choose what state's law will govern their contract. *Id.* (citation omitted). Where, as here, the parties make no such choice, the Court must apply

Michigan law unless a rational reason for doing otherwise exists. *Id.*

■ When deciding whether such a reason exists, the Court must first determine whether a foreign state has an interest in having its law applied. If not, the presumption in favor of applying Michigan law cannot be overcome; if so, the Court must decide whether Michigan's interests dictate that Michigan law be applied despite a foreign state's interests. *Id.*

■ Because Michigan has adopted the choice-of-law approach delineated in the Restatement of the Law (Second) of Conflicts of Law ("Restatement"), *see Chrysler Corp. v. Skyline Indus. Serv., Inc.,* 448 Mich. 113, 528 N.W.2d 698, 702 (1995), the Court must assess the following factors in determining whether Colorado has an overriding interest in whether the Court applies Colorado law regarding contracts to this case. Those factors include the following:

(a) the place of contracting;

(b) the place of negotiation of the contract;

(c) the place of performance;

(d) the location of the subject matter of the contract; and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) at § 188. The Court must evaluate these factors according to their importance to the matter at bar. *Id.*

In this case, if the Court were to assume *arguendo* that the Hargarten letters constituted contracts between Defendant and each Plaintiff, then the place of contracting would be where the letters were delivered to Plaintiffs, which was Colorado. The primary place of performance, as discussed above, would also have been Colorado. Mr. Ashworth recalls, as best he can, that the place of contract negotiation was an aircraft flying between Texas and Colorado. (Ashworth Dep. at 105:6–9.) Although Mr. Sipes does not make any clear representations as to where his alleged contract negotiations took place, they appear to have been in Texas. (Sipes Dep. at 83–93.) Given that the subject matter of these alleged contracts was Plaintiffs' employment, which they primarily served in Colorado, Colorado is the location of the subject matter of the contract. Regarding the final factor, which is the parties domicile, etc., only Mr. Sipes alleges a Michigan residence. Defendant is a Delaware corporation whose principal place of business is Colorado, and Mr. Ashworth alleges no tie to Michigan.

Considering the totality of the factors enunciated in § 188, the Court concludes that Colorado has a much greater interest than Michigan in applying its law to this case. Plaintiffs have adduced no evidence that Michigan's interests dictate that the Court nonetheless apply Michigan law to this case. The Court must therefore apply the substantive law of Colorado to the contractual claims at bar.

**B. Breach of Contract**

■ Under the law of Colorado, a plaintiff must prove the following elements to establish a breach of contract: (1) the existence of a contract; (2) the plaintiff's performance, or a justification for not performing; (3) the defendant's failure to perform; and (4) resulting damages. *Western Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo.1992). A contract exists where there is a "bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Pierce v. St. Vrain Valley Sch. Dist. RE–1J,* 981 P.2d 600, 603 (Colo.1999) (citation omitted).

■ Plaintiffs aver that the contracts entitling Plaintiffs to equity consisted of the Hargarten letters. On page 11 of

Plaintiffs' brief, specifically, Plaintiffs refer to the "contracts" as consisting of exhibits seven and ten, both of which consist solely of the Hargarten letters. (Pl. Br. at 11.) For Plaintiffs to prevail on their contract theories, therefore, these letters, standing alone, must constitute contracts. Defendant argues that no contract existed between it and Plaintiffs because it is beyond peradventure that Mr. Hargarten lacked the actual or apparent authority to bind Defendant to any provision of equity to Plaintiffs, and because there was no meeting of the minds between it and either Mr. Sipes or Mr. Ashworth.

Regarding Mr. Hargarten's alleged lack of actual authority, Defendant adduces the company's formation agreement. A formation agreement is a document that parties to a joint venture create in order to delineate, *inter alia*, the powers of corporate officers. *See* Stephen I. Glover, *Negotiating Specialized Internet Access/Exclusive Carriage Agreements*, 1206 PLA/Corp. 345, 351 (2000) (stating that formation agreements encompass employment agreements). In this case, Defendant's formation agreement provides that action on any "fundamental matter" requires a vote by a majority of the board of directors; i.e., that Mr. Hargarten, by himself, could not take action on a "fundamental matter." (Form. Ag. at § 3.2(g).) Defendant further shows that the formation agreement defines a "fundamental matter" to include the "issuance or sale ... of any equity interest" in Defendant. (Form. Ag. at 3.2(g)(xiii)). Because the equity interest that Plaintiffs allege Mr. Hargarten provided them could only be granted by a majority of Defendant's board, Defendant argues, Mr. Hargarten lacked the actual authority to issue an equity interest to Plaintiffs via the Hargarten letters.

In light of this evidence, the Court concludes that there is no issue of material fact as to whether Mr. Hargarten had actual authority to dispose of Defendant's equity. The Formation Agreement militates strongly toward the conclusion that he did not, and Plaintiffs adduce no competent evidence to the contrary.

▮▮▮ Plaintiffs nonetheless argue that Mr. Hargarten had apparent authority to bind Defendant. Where a recognized agency exists, unless the other contracting party knows the limits of that agency, the principal is bound by its agent's acts to the extent of that agent's apparent authority. *State Ins. Co. of Des Moines, Iowa v. Du Bois*, 7 Colo.App. 214, 44 P. 756, 758 (1895). Apparent authority is the "power to affect the legal relations of another person by transactions with third persons, professedly as an agent for the other, arising from and in accordance with the other's manifestations to such third persons." *Grease Monkey Int'l v. Montoya*, 904 P.2d 468, 474 (Colo.1995) (quotation omitted). Because apparent authority is created by the principal's written or spoken words or conduct that, reasonably interpreted, cause a third party to believe that the principal consents to have the act done on its behalf by the agent, the Court must look to Defendant's words and deeds when it decides whether Mr. Hargarten had apparent authority to provide Plaintiffs with equity in Defendant. *People v. Manning*, 672 P.2d 499, 507 n. 8 (Colo.1983); *see also Western Investment & Land Co. v. First Nat'l Bank of Denver*, 64 Colo. 37, 172 P. 6, 8 (1918) (reasoning that an agent's authority cannot be established by his own declaration).

▮▮▮ There is no issue of material fact as to whether a word or deed of Defendant could have caused Mr. Sipes to believe that Mr. Hargarten had apparent authority to bind Defendant to provide him with equity. This is so because Mr. Sipes's own deposition testimony establishes that he both

possessed and reviewed a copy of Defendant's formation agreement. (Sipes Dep. at 68–69.) That agreement, as explained above, makes clear that Mr. Hargarten, by himself, lacked authority to provide equity in Defendant to Mr. Sipes. (Form. Ag. at § 3.2.) As far as Mr. Sipes is concerned, therefore, a reasonable interpretation of Defendant's words and deeds could not have made it apparent to him that Mr. Hargarten had authority to give him equity in Defendant. *See Trustees of American Federation of Musicians and Employees' Pension Fund v. Steven Scott Enter.s, Inc.*, 40 F.Supp.2d 503, 511 (S.D.N.Y.1999) (reasoning that reliance on apparent authority ceased to be reasonable once a plaintiff knew of the agent's actual authority); *cf. Van Pelt v. State Bd.*, 195 Colo. 316, 577 P.2d 765, 771 (1978) (reasoning in the context of promissory estoppel that there can be no reasonable reliance where the putative promisee knew that the alleged promisor lacked authority); *American Train Dispatchers Ass'n v. Union Pacific R.R. Co.*, 679 F.Supp. 1535, 1544 (W.D.Mo.1987) (reasoning that any apparent authority ended when the plaintiff received and read a letter that made clear that the agent lacked authority).

As to Mr. Sipes's contract claims, therefore, the Court grants Defendant's motion for summary judgement on the ground that Mr. Hargarten's lack of actual or apparent authority conclusively establishes that there was no contract by which Defendant was obligated to provide equity to Mr. Sipes.

■ As to Defendant's motion for summary judgment vis-a-vis Mr. Ashworth, the issue of Mr. Hargarten's apparent authority is less clear. Mr. Ashworth, unlike Mr. Sipes, has not testified that he possessed and read a copy of Defendant's formation agreement. Although Defendant has adduced evidence that Mr. Ashworth should have known that Mr. Har-

garten lacked the authority to transfer a right to equity in Defendant, Mr. Ashworth has come forward with competent, countervailing evidence.

■ Importantly, Plaintiff Ashworth adduces that Defendant provided Mr. Hargarten with stationery containing corporate letterhead, and that it was upon such stationery that Mr. Hargarten wrote the letter that, according to Mr. Ashworth, constitutes Defendant's offer of equity. (Pl.Ex. 9.) When a corporate defendant provides its agent with company letterhead, and that agent in turn uses such stationery to purportedly act on behalf of the company, a third party might reasonably rely on the corporation's conduct and infer that the agent had apparent authority to act on behalf of the corporate defendant; in most cases, such evidence would suffice to create an issue of material fact regarding apparent authority. *See Mercer v. Weyerhaeuser Co.*, 324 N.J.Super. 290, 735 A.2d 576, 592–93 (1999); *cf. Montoya*, 904 P.2d at 477 (reasoning that use of the corporate letterhead was a factor that could support the existence of the defendant's apparent authority); *Barker v. FSC Sec. Corp.*, 133 F.R.D. 548, 551 (W.D.Ark. 1989); *Walker v. Pacific Mobile Homes, Inc.*, 68 Wash.2d 347, 413 P.2d 3, 5 (1966).

Mr. Ashworth also adduces competent evidence that at least one of Defendant's officers indicated to him that Mr. Hargarten had authority to offer an employment contract. Specifically, Mr. Ashworth offers his deposition testimony to the effect that shortly before Mr. Hargarten's letter of June 1, 1999, Mr. Chuck Schalliol, a board member of Defendant, told Mr. Ashworth that "Mr. Hargarten was making me a new offer starting June 1 of 1999." (Ashworth Dep. 60:7–20.) From this evidence, a reasonable jury might conclude that Defendant, speaking through Mr. Schalliol, indicated that Mr. Hargarten

possessed authority to offer the terms of employment that he allegedly made to Plaintiff Ashworth.

 Defendant argues that, even if Mr. Hargarten had the authority to bind Defendant, the terms of the alleged contract are so vague as to be unenforceable. Specifically, Defendant points to the following language: "Equity in Kinetra would be granted to you with terms consistent with those given to other members of the Kinetra Executive Committee and at a level of 1 % of Kinetra provided you are employed at Kinetra both at the time equity is granted and the date it is exercisable." (Def. Br. at 13.) The Court notes that it must construe contractual ambiguities against the drafter, which in this case, assuming there were a contract, would be Defendant. *See Asmussen v. Post Printing & Publ'g,* 26 Colo.App. 416, 143 P. 396, 398 (1914).

Regardless of how the Court construes the above-quoted sentence, however, it cannot conclude that a reasonable jury could decide that such language constitutes a meeting of the minds regarding the Defendant's providing equity to Mr. Ashworth. This is so because, although Defendant appears to be obligated to provide equity in itself to Plaintiff Ashworth on "terms consistent with those given to other members of the Kinetra Executive Committee," nothing within the text of the purported contract indicates just when, if ever, Defendant would be compelled to provide equity, under any terms, to any member of the Kinetra Executive Committee. In other words, Mr. Ashworth's ostensible entitlement to equity is subject to a condition precedent that need never be fulfilled. It appears, in fact, that under this language Defendant has carte blanch never to issue equity to any member of the Kinetra Executive Committee. The contract Plaintiff Ashworth purports to find in the Hargarten letter, therefore, is too indefinite to bind Defendant to provide him equity. *See New York Life Ins. v. K N Energy, Inc.,* 80 F.3d 405, 411 (10th Cir. 1996).

### C. Promissory Estoppel

 The elements of a claim for promissory estoppel are:

(1) a promise that the promisor should reasonably expect to induce action or forbearance of a definite and substantial character by the promisee;

(2) action or forbearance induced by that promise; and

(3) circumstances such that injustice can be ·avoided only by enforcement of the promise.

*Nelson v. Elway,* 908 P.2d 102, 110 (Colo. 1995).

 Regarding Mr. Sipes, the Court notes that, where an alleged promisee knows that the putative promisor lacks authority to make an enforceable promise, there is no action for promissory estoppel. *See Van Pelt,* 577 P.2d at 771 (reasoning that there can be no reasonable reliance where the putative promisee knew that the alleged promisor lacked hiring authority). For reasons discussed above, Mr. Sipes knew or should have known that Mr. Hargarten lacked authority to bind Defendant to providing Mr. Sipes equity. The Court therefore grants Defendant summary judgment as to this cause of action vis-a-vis Mr. Sipes.

Regarding Mr. Ashworth, the Court grants Defendant summary judgment because, for reasons discussed above, Plaintiff Ashworth has failed to adduce competent evidence that there was a promise sufficient for a theory of either promissory estoppel or breach of contract. *See generally Toth v. Gates Rubber Co.,* No. 99–1017, 216 F.3d 1088,·2000 WL 796068, at *4 (10th Cir. June 21, 2000).

### D. Repudiation or Anticipatory Breach of Contract

For reasons set forth above, Plaintiffs have failed to adduce evidence that would support the existence of a contract. The Court therefore grants summary judgment to Defendant regarding both Plaintiffs' claims for repudiation or anticipatory breach of contract.

### E. Negligent Misrepresentation

All parties agree that Michigan law applies to this claim.

 The elements of negligent misrepresentation are:

(1) a material misrepresentation by the defendant;

(2) the representation was unintentionally false;

(3) the representation is made in connection with the contract's formation;

(4) the defendant and plaintiff were in privity of contract;

(5) the plaintiff acted in reliance on the defendant's misrepresentation;

(6) resulting damages to the plaintiff; and

(7) the plaintiff's damages inured to the defendant's benefit.

*M & D, Inc. v. W.B. McConkey,* 231 Mich. App. 22, 585 N.W.2d 33, 36–37 (1998), *appeal denied,* 459 Mich. 962, 590 N.W.2d 576 (1999).

Defendant primarily relies on its earlier-stated arguments and evidence to argue that Defendant made no misrepresentation because Mr. Hargarten had no authority to speak for Defendant in this matter. (Def. Br. at 19.) Plaintiffs rely on their earlier-delineated contentions and evidence to show that competent evidence shows that Mr. Hargarten did have authority to speak for Defendant (Pl. Br. at 18), and there was thus a material misrepresentation by Defendant.

As explained above, the Court holds that it is beyond peradventure that Mr. Hargarten's words regarding equity did not amount to a representation by the Defendant. Because the element of a misrepresentation by the named Defendant is absent, the Court grants summary judgment to Defendant as to this cause of action.

### IV. CONCLUSION

For reasons expressed above, the Court grants Defendant's motions for summary judgment as to all causes of action by each Plaintiff.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motions for summary judgment [docket entries 17 and 18] are **GRANTED. SO ORDERED.**