NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0697n.06

No. 17-1323

**FILED**
Dec 20, 2017
DEBORAH S. HUNT, Clerk

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| AMELITA MANDINGO | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| PNC BANK, NATIONAL ASSOCIATION | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:     GUY, MOORE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  This case presents several state-law claims arising out of PNC Bank's alleged mishandling of Amelita Mandingo's mortgage and the subsequent foreclosure of her property.  She claims common-law and statutory slander of title, quiet title, innocent and negligent misrepresentation, and fraud.  Her claims all boil down to allegations that PNC falsely represented to the bankruptcy court and other parties that she was three months in default, provided her with false information regarding her account balances, and did not comply with two Michigan statutes when foreclosing on its mortgage interest.  Because each of Mandingo's claims suffers from a fatal defect, the district court was correct to grant summary judgment to PNC.

PNC held a mortgage interest in Mandingo's home and property.  In 2009, Mandingo filed for bankruptcy under Chapter 13, and the resulting bankruptcy plan required her to continue

making monthly payments to PNC. In October 2011, she began to fall behind on her payments.[1]

On March 13, 2012, PNC moved the bankruptcy court to lift the automatic stay preventing foreclosure, alleging that Mandingo was "three (3) months in default[.]" On August 2, Mandingo and PNC stipulated that she owed $18,263.75, which "include[d] the June-August 2012 payments at $2,811.90 each, plus property inspections of $63.00, the escrow shortage of $8,639.05, $300 in prior Bankruptcy fees and the current fees and costs of $826." As part of the stipulation, Mandingo agreed to pay, starting on September 1, an additional $3,043.96 per month on top of her regularly scheduled payments. Mandingo also agreed that if she failed to make the payments, PNC could file a notice of default and the bankruptcy court would then lift the automatic stay on the property so that PNC could foreclose its interest. Mandingo made her first set of payments in September 2012 but none after.

PNC allowed Mandingo to apply for several loan modifications, which were all ultimately rejected. PNC later filed a notice of default, and on May 31 the bankruptcy court lifted the automatic stay from Mandingo's property, leaving PNC free to pursue its "federal and/or state law rights to the property."

In June 2013 Mandingo applied for assistance from Step Forward Michigan, a program that helps people avoid foreclosure by paying up to $30,000 of their outstanding balance. Mandingo's application was initially denied because her assets were greater than the program allowed. Munai Nawash, the housing counselor who assisted Mandingo, advised Mandingo to pay $13,600 to PNC, which, according to Nawash, would reduce Mandingo's assets enough to qualify for the program. Relying on that advice, Mandingo made the $13,600 payment by

---

[1] Mandingo made her October 2011 payment on November 1, 2011; her November 2011 payment on December 23, 2011; her December 2011 payment on January 27, 2012; her January 2012 payment on March 12, 2012; her February 2012 payment on March 23, 2012; her March 2012 payment on April 16, 2012; her April 2012 payment on May 29, 2012; and her May 2012 payment on July 6, 2012.

telephone, but her subsequent application was again denied because her arrearage exceeded the $30,000 allowed by Step Forward Michigan.

PNC notified Mandingo that she was in default and had to pay $46,516.47 to cure, which she did not do. PNC accelerated the loan balance of $245,524.03 and referred the matter to its foreclosure attorneys. PNC posted notice of the sale at the property and four times in the *Detroit Legal News*, and PNC eventually purchased the property at a sheriff's sale. The statutory redemption period expired without Mandingo's attempting to redeem the property.

Mandingo instead brought this suit, alleging common-law and statutory slander of title, quiet title, innocent and negligent misrepresentation, and fraud, including silent fraud and "bad faith promises." At the close of discovery, PNC moved for summary judgment, which the district court granted on all counts, finding that each of Mandingo's claims failed as a matter of law. The district court rejected Mandingo's slander-of-title claims, which were based on statements made by PNC to the bankruptcy court and in unspecified chain-of-title documents. With respect to the bankruptcy-court statements, the court held them to be absolutely privileged under Michigan law and stipulated to by Mandingo. With respect to the chain-of-title statements, the court held that Mandingo had not shown any of PNC's statements to be false. With respect to the quiet-title claim, the district court held that "Mandingo presents no facts or evidence to show that her interest in the property is superior to PNC's interest," noting that Mandingo had admitted in her deposition that she does not own the property and did not otherwise rebut PNC's proof of ownership (the sheriff's deed). The district court also rejected Mandingo's innocent- and negligent-misrepresentation claims, which were based on "a false notice of a non-existent corporation in the notices published and sent pursuant to [Mich. Comp. Laws §] 600.3205" and PNC's having provided false or inconsistent information as to who

acquired the property from the sheriff's sale. Regarding the former, the district court determined that the law cited by Mandingo had been repealed a year prior to her foreclosure, and the district court found that the latter allegation was unsupported by the record. The district court also rejected Mandingo's argument that PNC had made an actionable misrepresentation to the bankruptcy court:

> In her response, Mandingo apparently abandons this line of argument altogether by failing to address PNC's notification-of-purchase evidence, or to identify PNC's allegedly false statement. Instead, she argues that PNC made false representations to the bankruptcy court that Mandingo was three months behind on her mortgage. But, apart from her personal testimony that she was not in arrears, Mandingo offers nothing to rebut the compelling record evidence offered by PNC. Mandingo stipulated that she had a "[d]elinquincy of $18,263.75" for her "June–August 2012 [mortgage] payments." Her claim that the stipulation was a "lie" is unavailing. Thus, Mandingo fails to show a genuine issue of fact as to her misrepresentation claims.

Finally, the district court rejected Mandingo's fraud claims, finding them substantially similar to her innocent- and negligent-misrepresentation claims. The district court also rejected Mandingo's silent-fraud theory:

> In response, Mandingo appears to abandon her fraud and bad-faith arguments and instead argues that PNC "failed to disclose it did not apply Plaintiff's payments for approximately seven months" and "failed to disclose for years that it did not do an escrow analysis for the time period of 2010–12." But "mere nondisclosure of information is insufficient" to state a claim for silent fraud. *Am. Furukawa, Inc. v. Isthihar Hossain, HT Wire & Cable Americas, LLC*, No. 14-CV-13633, 2016 WL 3444079, at *9 (E.D. Mich. June 23, 2016). Instead, Mandingo must show that PNC had a "pre-existing legal or equitable duty to disclose." *Tocco v. Richman Greer Prof'l Ass'n*, 553 F. App'x 473, 476 (6th Cir. 2013). Mandingo makes no showing that PNC had a legal duty to disclose any information, or that PNC ever denied her any information that she had requested. Thus, her fraud claims fails [sic] as a matter of law.

Thus, the district court granted summary judgment on all of the claims and dismissed the case.

Mandingo now appeals, continuing to assert each of the claims rejected by the district court. But that rejection was correct because each claim has a fatal defect, and Mandingo does not address those deficiencies on appeal. Each of her claims fails as a matter of law.

The district court correctly granted summary judgment to PNC on Mandingo's slander-of-title claims. Mandingo claims that PNC slandered her title to the foreclosed property by making false statements about her loan delinquency to the bankruptcy court and by publishing notices in the chain of title, including a statement that "falsely represented [PNC's] authority" to foreclose by "falsely alleging compliance with" Mich. Comp. Laws §§ 600.3204 and 600.3205. Both claims fail.

First, Mandingo's claim that PNC slandered her title by making false statements to the bankruptcy court fails because any such statement would have been absolutely privileged. Under Michigan law, "[s]tatements made during the course of judicial proceedings are absolutely privileged, provided they are relevant, material, or pertinent to the issue being tried," *Maiden v. Rozwood*, 597 N.W.2d 817, 830 (Mich. 1999), and absolute privilege precludes a claim for "damages in a civil action for slander," *Schlinkert v. Henderson*, 49 N.W.2d 180, 183 (Mich. 1951). Thus any statement made by PNC to the bankruptcy court could not have been slanderous.

Second, Mandingo's slander-of-title claims with respect to the chain-of-title statements fail because Mandingo has put forward no evidence showing that PNC ever made a false statement. Statutory and common-law slander of title both require, among other things, a published false statement. *See B & B Inv. Grp. v. Gitler*, 581 N.W.2d 17, 20 (Mich. Ct. App. 1998); *see also* Mich. Comp. Laws § 565.108. Because it is hard to tell which statements Mandingo means to call slanderous, the district court considered the clearest example: PNC's

notice-of-foreclosure statement, which was reprinted in the sheriff's deed and said, "Default has been made in the conditions of a mortgage made by Amelita L. Mandingo." Mandingo calls that statement false, and she supports that argument only with the conclusory assertion that she was not actually in default. But Mandingo has put forward no evidence disputing that she was in default when PNC published the notice-of-foreclosure statement. Mandingo's claim that PNC falsely claimed compliance with Mich. Comp. Laws §§ 600.3204 and 600.3205 is also meritless. The sheriff's deed—the most likely thing to have slandered Mandingo's title—does not mention either statute, and Mandingo has not explained, let alone put forward evidence showing, how PNC violated either statue. In sum, the district court rightly concluded that Mandingo has failed to demonstrate a genuine issue of material fact that PNC slandered her title.

The district court likewise properly granted summary judgment to PNC on Mandingo's quiet-title claim. A quiet-title claim requires the plaintiff to show "facts establishing the superiority of the plaintiff's claim." *Khadher v. PNC Bank, N.A.*, 577 F. App'x 470, 478 (6th Cir. 2014) (citing Mich. Ct. R. 3.411(B)(2)). Mandingo has pointed to no such facts. PNC acquired title at a sheriff's sale, and Mandingo admitted in her deposition that she did not own the property. Mandingo makes a few arguments to attack her default and the foreclosure sale, but they are not persuasive. Mandingo asserts that the default and foreclosure sale were improper under Mich. Comp. Law § 600.3204 because "no escrow analysis had been performed" by PNC and that therefore PNC "could not provide an accurate payment amount." PNC has admitted as much, but Mandingo does not explain how these facts relate to the Michigan statute that PNC purportedly violated, how they render her title superior to PNC's, or how they otherwise relate to a quiet-title action. Because Mandingo has put forward no facts showing that

her claim to the property is superior to PNC's, the district court correctly granted summary judgment on her quiet-title claim.

The district court also properly granted summary judgment to PNC on Mandingo's innocent- and negligent-misrepresentation claims. The thrust of Mandingo's argument on appeal is that Mandingo was not actually in default, but only appeared that way because PNC had applied funds that she had paid to the wrong accounts, and so it was an actionable misrepresentation for PNC to tell the bankruptcy court that Mandingo was in default. These claims cannot succeed. A claim for innocent misrepresentation requires that a misrepresentation be made "in a transaction between [the parties]," *McKind v. Palms Invs., L.L.C.*, No. 273138, 2007 WL 1342557, at *5 (Mich. Ct. App. May 8, 2007), and to claim negligent misrepresentation a plaintiff must show that a false representation was made in connection with the formation of a contract, *see, e.g.*, *Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 845 (E.D. Mich. 2010) (citing *Sipes v. Kinetra, LLC*, 137 F. Supp. 2d 901, 910 (E.D. Mich. 2001)). Here, PNC made the allegedly tortious false representation, identified by the forensic-accounting report attached to Mandingo's complaint, in its March 13 motion in Mandingo's bankruptcy case.[2] That statement—made in a bankruptcy-court filing—was not part of a transaction, nor did it give rise to a contract between PNC and Mandingo, and Mandingo has pointed to no Michigan precedent suggesting that a false statement made in a court filing can give rise to a claim for innocent or negligent misrepresentation. The facts of this case are far outside the ambit of any

---

[2] PNC's March 13 motion apparently did contain a technically false representation. That motion said that Mandingo was "currently three (3) months in default, due and owing for January 1, 2012[.]" The payment-history log shows that Mandingo made her January 1 payment on March 12, which means that on March 13 she was only two months behind, owing her February 1 and March 1 payments. Thus, it appears that PNC's March 13 motion did contain a false representation because Mandingo was, as of the day before, only two months in default, rather than three as stated in the motion.

legally cognizable innocent- or negligent-misrepresentation claim, so those claims fail as a matter of law.

Lastly, the district court was correct to reject Mandingo's fraud claims. On appeal, Mandingo presses a silent-fraud theory that PNC "failed to disclose it did not apply [her] payments for approximately seven months," "failed to disclose for years that it did not do an escrow analysis for the time period of 2010-2012," and "failed to disclose the accurate and correct arrearage on Appellant's account." To be sure, PNC has admitted that it did not conduct an escrow analysis during that period, and Mandingo's expert concluded that PNC's failure resulted in "flawed and inaccurate reporting," presumably referring to her arrearage amount. But to claim silent fraud, a plaintiff must show that the defendant "failed to disclose a material fact," knowing "that the failure to disclose would create a false impression," and with the "inten[t] that the plaintiff rely on the resulting false impression." *City of Dearborn v. Burton-Katzman Dev. Co.*, No. 309758, 2014 WL 7212895, at *10 (Mich. Ct. App. Dec. 18, 2014) (citing *Hord v. Envtl. Research Inst. of Michigan*, 579 N.W.2d 133, 136–37 (Mich. Ct. App. 1998)). Even if PNC's failures were material nondisclosures, Mandingo's claim still fails because a reasonable jury could not conclude, on the record before this court, that PNC intended those omissions to defraud Mandingo. Therefore Mandingo's silent-fraud claim fails as a matter of law, so the district court was correct to grant summary judgment on it.

We affirm the judgment of the district court.