RICHARD J. LYNGE *et al.*, Plaintiffs-Appellees, *v.* KEITH A. KUNSTMANN *et al.*, Defendants-Appellants.

Second District    No. 80-160

Opinion filed March 27, 1981.

E. Paul Lanphier, of Elmhurst, for appellants.

Kenneth E. Poris, of Breen, Lucas & Poris, of Addison, for appellees.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

This suit challenges the propriety of a summary judgment entered in favor of the sellers of real estate against their purchasers in the amount of $7,300 representing the earnest money as liquidated damages by the Circuit Court of Du Page County. Plaintiffs, Richard J. Lynge and his wife Dorothy, owned residential real estate in joint tenancy which they listed with Thorsen Realtors' Lombard office on March 24, 1977. It appears that the Lynges planned to move due to a change in Mr. Lynge's employment and it was decided that Mrs. Lynge would remain in the Lombard residence until it was sold. On May 17 the defendants, Keith A. Kunstmann and his wife Jeannette, signed a written offer of $73,000 to purchase the property, which was submitted through Baker Realty utilizing a standard residential real estate contract in common use in Du Page County. The offer was presented to Mrs. Lynge and was reviewed the evening of May 17 in her home by telephone with Mr. Lynge, who was then residing in Fairfield Bay, Arkansas. Certain changes were agreed upon between the Lynges, and Mrs. Lynge initialed the changes and signed the document. Carol Lindstrom, of Thorsen Realtors, and Mr. Baker, of Baker Realty, were present in the Lynge home at the time. There appears to have been a rider attached to the contract which Mrs. Lynge did not sign but rather made a notation on its face that it was not agreed to and thereafter initialed the notation.

On May 20, 21, and 23, 1977, Mr. Lynge sent the following telegrams to Mrs. Carol Lindstrom at Thorsen Realty, his real estate agent:

> *May 20, 1977* "I accept the 73,000 offer for our house at 124 22nd Street, Lombard, under the following conditions #1 No contingencies except for obtaining fiancing [*sic*] for a 50,000 mortage [*sic*] #2 Closing will be on July 6, 1977 #3 Occupancy will be July 8, 1977 #4 Drapies [*sic*], swimming pool and equipment are included.
> Richard J. Lynge"

> *May 21, 1977* "This is a confirmation copy of a previously phone-delivered telegram.
> Amend yesterday's telegram by adding the words 'delete from contract the wording to buyers satisfaction'.
> Richard J. Lynge"

*May 23, 1977* "Delete the paragraph in the contract use and occupancy clause.
Richard J. Lynge"

*May 23, 1977* "Amend terms of contract to read closing and possession to take place no later than July 28, 1977.
Richard J. Lynge."

The parties' depositions and those of witnesses are in agreement that all the changes requested by Mr. Lynge pursuant to his May 17 telephone call and subsequent telegrams were made and initialed by Mrs. Lynge and the Kunstmanns. We note however that the subject matter of the second and third points in the first telegram were never changed as requested. These changes related to closing on July 6 and occupancy on July 8. Nevertheless, it would appear that no further changes were requested, made, or initialed after the date of May 24, 1977. It further appears that the real estate agreement bearing the signature of Mrs. Lynge and the Kunstmanns was mailed by one of the realtors to Mr. Lynge at Fairfield Bay, Arkansas. The Kunstmanns maintain that they were advised on May 27 that the contracts had been mailed to Mr. Lynge that day, but Mr. Lynge indicates that he received the contracts on May 26, signed them that day, but did not return them immediately and is uncertain as to the date he did return them, but acknowledges that it was several days after he had received them. He stated that he gave the contracts to a friend who returned to Chicago with them and who had them delivered to Thorsen Realty by messenger. The deposition of Carol Lindstrom of Thorsen indicates that she was unaware of the return of the signed contracts until June 17.

On May 27, at approximately 9:30 a.m. the Kunstmanns delivered an earnest money check in the amount of $7,300 to Baker Realty. They said that later in the day, "Bud," who was taking Mr. Baker's place while he was on vacation, returned to them the receipt of Thorsen Realty for the earnest money and indicated that the contracts had been mailed to Mr. Lynge that day. Later in the day of May 27 the Kunstmanns changed their minds about purchasing the property and called their attorney, who was unable to see them immediately. Thereupon they drafted hand-written notices of withdrawal of their offer and hand-delivered the notices to Mrs. Lynge at her residence and to the offices of Thorsen and Baker realtys. Thereafter they stopped payment on their earnest money check.

Plaintiffs' complaint alleged, *inter alia*, that a valid contract had been entered into prior to the attempted notice of cancellation by the defendants, who refused to perform their obligations under the contract, and

that the plantiffs were at all times ready, willing and able to perform. In their answer, defendants denied that a valid contract was entered into and that they failed to perform, and stated affirmatively that the contract was cancelled prior to acceptance and the transmittal of acceptance by Mr. Lynge. Defendants further alleged by way of affirmative defense that the plaintiffs have suffered no actual damages as a result of defendants' cancellation of the contract.

The defendants filed a motion for summary judgment which included the cooperative listing agreement, the standard residential sales contract before and after Mr. Lynge's signature, the telegrams, the handwritten withdrawal of the offer, various items of correspondence, and the depositions of the Lynges. In opposition thereto, plaintiffs filed a motion for summary judgment and a response to the defendants' motion for summary judgment attached to which were the depositions of the Kunstmanns. After hearing arguments of counsel the court filed its memorandum opinion on February 7, 1980, declaring the existence of an enforceable contract, and summary judgment was entered for plaintiffs in the amount of the liquidated damages specified in the contract, being $7,300. Defendants filed a timely notice of appeal.

Defendants argue that the granting of summary judgment by the trial court in favor of the plaintiffs was improper because the notice of withdrawal of the Kunstmanns' offer was timely and terminated their offer. It is the Kunstmanns' position that the failure to return the signed contracts by Mr. Lynge prior to the delivery of their notice of withdrawal to Mrs. Lynge and the real estate agencies on May 27, 1977, constituted a failure to communicate acceptance of their offer. They argue that where no mode of acceptance is set forth in the offer, while the acceptance need not be in any particular form nor evidenced by express words, nonetheless acceptance must be signified by the parties' acts and conduct which clearly constitutes an acceptance of the agreement. They maintain of course that prior to acceptance the offer may be revoked or withdrawn at any time before it is accepted and the acceptance is communicated, and that since Mr. Lynge had not signed the contract and returned it prior to the Kunstmanns' withdrawal, there was no meeting of the minds and the contract lacked mutuality since it could not be enforced against the Lynges.

Plaintiffs, on the other hand, argue that by May 24 all that was necessary to be done to give rise to a binding contract had been done. Plaintiffs adopt what they characterize as the trial court's finding that the transaction of May 17 constituted a counteroffer by the defendants which was accepted by the Lynges through Mr. Lynge's concurrent assent over the telephone that evening and his wife's signature. However, our reading of the trial court's letter of opinion of February 6, 1980, appears to relate

to the transactions of May 23, when other changes were initialed by Mrs. Lynge. We confess some difficulty in ascertaining with precision the trial court's finding regarding a counteroffer by the defendants, but our disposition of this case requires no further inquiry in that regard. Plaintiffs contend that Mr. Lynge's signature was not required on the contract where there had been a verbal acceptance, notice thereof, and an offer to perform. (*Ullsperger v. Meyer* (1905), 217 Ill. 262, 75 N.E. 482; accord, *Classen v. Ripley* (1951), 343 Ill. App. 298, 98 N.E.2d 868.) Plaintiffs maintain that their complaint alleges verbal acceptance by Mr. Lynge and that the depositions disclose that the Kunstmanns so understood it. The plaintiffs rely on *Broderick v. Driscoll* (1921), 301 Ill. 174, 133 N.E. 724, for the proposition that a nonsigning husband with knowledge of the transaction and acceptance of a copy thereof together with a cash payment was bound to a contract signed by his wife where he had authorized her to sign. Plaintiffs contend that the depositions and the contract establish that Mr. Lynge's signature was not a condition precedent and that the defendants expressed no intention of a requirement of his signature and therefore the acceptance need not be in any particular form. Finally, the plaintiffs argue that after the Kunstmanns had initialed the changes indicated in Mr. Lynge's telegrams of May 20, 21, and 23, the instrument became a counteroffer by the Kunstmanns which was accepted when Mrs. Lynge initialed the changes that had been initialed by the Kunstmanns. This gave rise to a mutually enforceable obligation.

■■ We are unpersuaded by the plaintiffs' theory and believe summary judgment for the plaintiffs was improper. Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1977, ch. 110, par. 57(3).) In ruling on a motion for summary judgment the trial court must construe the pleadings, depositions, and affidavits most strictly against the moving party and most liberally in favor of the opponent. (*Lumbermens Mutual Casualty Co. v. Poths* (1968), 104 Ill. App. 2d 80, 243 N.E.2d 40.) Inferences may be drawn from the facts which are not in dispute, and if fair-minded persons could draw different inferences from these facts, then a triable issue exists. (*McHenry Sand & Gravel, Inc. v. Rueck* (1975), 28 Ill. App. 3d 460, 328 N.E.2d 679.) The right of a party to summary judgment must be clear and free from doubt. (*Dakovitz v. Arrow Road Construction Co.* (1975), 26 Ill. App. 3d 56, 324 N.E.2d 444.) Summary judgment is improper where there is a triable issue of fact as to whether the seller and purchaser of real estate had a meeting of the minds as to conditions precedent in the contract or whether they were waived. *Fox v. Stewart* (1980), 91 Ill. App. 3d 201, 414 N.E.2d 881.

■■ First, we note that Mr. Lynge telegraphed his conditional acceptance May 20 to the contract which had been amended and signed by the buyers and Mrs. Lynge on May 17. Setting the significance of the mode of Mr. Lynge's conditional acceptance aside for the moment, clearly Mr. Lynge's telegram of May 20 was a rejection of the Kunstmanns' offer and constituted a counteroffer (*Arthur Rubloff & Co. v. Drovers National Bank* (1980), 80 Ill. App. 3d 867, 871, 400 N.E.2d 614; *Zeller v. First National Bank & Trust Co.* (1979), 79 Ill. App. 3d 170, 398 N.E.2d 148) and could not be construed as an acceptance of the offer since it was conditional. Therefore, any act constituting acceptance had to be after May 20. (*O'Brien v. Kawazoye* (1975), 27 Ill. App. 3d 810, 327 N.E.2d 236.) The next act of the Lynges occurred on May 23, when Mrs. Lynge initialed changes directed by Mr. Lynge but already approved by the Kunstmanns as indicated by their initials. Therefore, Mrs. Lynge could not be said to be accepting anything by her affixing of her initials May 23, as the Kunstmanns had already approved the changes. We conclude as to this analysis that at most it was her assent to changes requested of the real estate agent by telegram which had previously been approved by the Kunstmanns.

■■ The real question is, absent language in the contract, what was the intention of the parties as to whether there was a binding contract on May 23 or 24? Ordinarily one of the acts forming part of the execution of a written contract is the signing of it. However, a signature is not always essential to the binding force of an agreement. Whether a writing constitutes a binding contract, even though it is not signed, or whether the signing of the instrument is a condition precedent to its becoming a binding contract usually depends upon the intention of the parties. The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, as, for example, by acts or conduct of the parties. See 17 C.J.S. *Contracts* §62 (1963). See also 12 Ill. L. & Prac. *Contracts* §65 (1955).

■■ The law is clear in Illinois that where the parties reduce the agreement to writing and its signature by them is a condition precedent to its completion, no contract will exist until that is done. (*S.N. Nielsen Co. v. National Heat & Power Co.* (1975), 32 Ill. App. 3d 941, 946, 337 N.E.2d 387, 391; *Calo, Inc. v. AMF Pinspotters, Inc.* (1961), 31 Ill. App. 2d 2, 176 N.E.2d 1.) It has been held that questions of intent are particularly inappropriate for summary judgment. *Fitzsimmons v. Best* (7th Cir. 1976), 528 F.2d 692, 694.

■■ Returning to the mode of acceptance initially adopted by Mr. Lynge, that is by telegram on May 20, we think it is particularly significant that it was plaintiff Lynge in this case who established the most persuasive evidence of the mode of acceptance, namely a writing bearing his signa-

ture, albeit by telegram, on May 20. A review of the first phase of the transaction which occurred on May 17 shows that all of the elements the plaintiff would presumably require were present and should have given rise to a binding contract. The buyers, the sellers (including Mr. Lynge by long-distance telephone), and the real estate agents were all present while changes were suggested, made and initialed and the contracts were signed. Yet it appears that Mr. Lynge felt either able or perhaps obligated to communicate his intentions three days later by telegram. A trier of fact could reasonably conclude that that act established the agreed-upon mode for the Lynges' acceptance and that until Mr. Lynge had accepted by telegram or some other communicated writing, there was only an offer as of May 27, which was withdrawn by the Kunstmanns on that day. See 12 Ill. L. & Prac. *Contracts* §38 (1955).

■■ This analysis leaves unaddressed the suggestion in plaintiffs' brief that the initialing of the contract by the Kunstmanns after the telegrams had all been received, but before Mrs. Lynge initialed the changes, resulted in acceptance of Mr. Lynge's counteroffer, at which point the parties were bound to the contract. Again, the intent of the parties in this regard is the critical question. (*Fox v. Stewart.*) Since the real estate agents for the Lynges as well as the Kunstmanns indicated that Mrs. Lynge's initials would be required and that the contracts would be mailed to Mr. Lynge for his *signature*, it could be reasonably concluded by a trier of fact that the parties anticipated final approval by both Lynges, she by initials and he by signature on the contract, before a binding agreement arose. The depositions clearly indicate that all parties anticipated that the contracts would be mailed to Mr. Lynge and that he would sign and return them. Certainly, there must have been a reason for doing so beyond simply providing him a copy of the agreement. If that were the case, a single copy of the contract would have sufficed.

In a letter of supplementary opinion the trial court directed the parties to *Hooven v. Woodiel* (1975), 27 Ill. App. 3d 467, 327 N.E.2d 276. In that case, an action for breach of an installment contract for the sale of land, the defendant buyer raised the affirmative defense that since both the seller and the seller's wife, who was identified on the installment agreement as a joint tenant, had not signed the installment agreement, the seller was unable to show that he was ready and able to convey a warranty deed to the defendant. Upon the defendant's default in payment of the purchase price the appellate court concluded that Mrs. Hooven's failure to sign the agreement alone was no evidence of the plaintiff's inability to perform at a future date, and that under the agreement the plaintiff's time for performance had not arrived prior to the defendant's default. We find this case to be inapposite on its facts and while it may give some support to the argument that a signature is not

always required, a principle with which we have no argument, it lends no support to the plaintiffs' theory that a binding contract arose before May 27 on the facts of this case.

Since we reverse this cause and remand it to the Circuit Court of Du Page County for further proceedings, we need not consider the defendants' second issue relating to the propriety of the amount of judgment entered by the trial court.

Reversed and remanded.

NASH and VAN DEUSEN, JJ., concur.