**DETROIT TIGERS, INC., Plaintiff,**

v.

**IGNITE SPORTS MEDIA, LLC, Defendant.**

No. 01–72907.

United States District Court, E.D. Michigan, Southern Division.

April 12, 2002.

Mark J. Zausmer, Alan D. Wasserman, Fink, Zausmer, Farmington Hills, MI, for plaintiff.

Dennis J. Levasseur, Bodman, Longley, Detroit, MI, for defendant.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

BORMAN, District Judge.

Before the Court is Defendant's motion to dismiss (Docket Entry #3). The Court heard oral argument on this motion on April 5, 2002. Upon consideration of the motion, the submissions of the parties, and the applicable law, the Court will GRANT IN PART and DENY IN PART the motion to dismiss. Specifically, the Court will DISMISS Count III for promissory estoppel; all other counts remain.

## I. BACKGROUND

### A. Factual Background

This is a dispute surrounding the formation/execution/performance of an alleged contract regarding the provision of media services (i.e., an internet website at www.DetroitTigers.com) to the Detroit Tigers baseball team. The case was filed here on the basis of diversity jurisdiction, 28 U.S.C. § 1332.

In January of 2000, Plaintiff, Detroit Tigers, Inc., and Defendant, Ignite Sports Media, LLC, entered into negotiations for the operation of the Tigers' official website[1] for the 2000 baseball season. These oral negotiations were reduced to writing in February of 2000, in a document entitled "Letter of Intent" ("LOI"), dated February 22, 2000 but signed by the parties on

March 1, 2000.[2] (The LOI is attached to the Complaint at Exh. A.) The basic provisions of the LOI provide that Defendant will produce, maintain and host the website for Plaintiff, in exchange for a 50/50 share of the net profits of the site. Defendant would be responsible for its costs, and would guarantee a specific fee to Plaintiff per year (i.e., $600,000 for 2000, etc.). The document provided that the LOI itself was not a binding contract: "Except for the matters set forth in this paragraph this LOI does not create a legal, binding obligation on either party, but merely represents the present intentions of the parties." (LOI, Exh. A to Compl., at page 5.) It further provided:

Neither party shall have any liability to the other based on failure to ultimately consummate the transaction envisioned herein. The performance of either party prior to execution of formal contract of any of the obligations which may be included in a contract between the parties when negotiations are completed shall not be considered as evidence of intent by either party to be bound by this LOI other than as set forth in this paragraph above.

(*Id.* at 5.)

Thereafter, the parties negotiated and drafted a written contract, entitled "Interactive Media Services Agreement Between Ignite Sports Media, LLC and [Detroit Tigers, Inc.]." (*See* Compl. Exh. B, hereinafter "MSA".) The M.S.A. § is an unpaginated 26 page document, in black-line draft form, outlining the terms of the parties' business relationship. Its basic provisions are similar, but not identical to the basic provisions found in the LOI. Defen-

---

1. The current website, run by Sun Microsystems, includes statistics, news, schedules, merchandise, pictures, etc.

2. The document stated that it "will remain in effect until 5:00 PM ... on February 28, 2000, unless both parties agree to extend the expiration." It is unclear why it apparently was not signed until two days later. (2000 was a leap year.) However, this is immaterial to the instant motion.

dant will produce, maintain and host the website for Plaintiff. (MSA, Exh. B at 1, and 9–10, § 2.4.) In exchange, Plaintiff would, *inter alia,* license its trademarks, service marks, and logos to Defendant for use on the website, royalty-free. (*Id.* at 7–8, § 2.1.5.) Defendant would bear its own expenses, up to $400,000. (*Id.* at 13, §§ 6.2 & 6.3.) Defendant would guarantee a specific annual fee to Plaintiff (i.e., $600,000 for 2000, etc.). (*Id.* at 13, § 6.1.) The parties would share revenue as follows: Defendant would pay Plaintiff 50% of the "Adjusted Gross Revenue of the Web Site"[3] in excess of $1 million. (*Id.* at 13, § 6.4.) The M.S.A. § also, *inter alia,* contains a provision with a choice of law clause, and a forum selection clause, both indicating Illinois as the chosen state. (*Id.* at 24, § 19.8.)

The agreement required the approval of the Office of the Commissioner of Major League Baseball ("MLB"), per the LOI. (LOI, Exh. A to Compl.; at 3.) At the end of negotiations, Defendant Ignite sent the M.S.A. § to MLB for approval. (Compl. at ¶¶ 13, 17, 18, 23, 29.) In anticipation of approval from MLB, the parties commenced performance of the agreement (i.e., Defendant, *inter alia,* hosted the website). (Compl. at ¶¶ 14, 16.) MLB approved the M.S.A. § on July 5, 2000. (Compl. at ¶ 17, also see first page of Exh. B.)

Despite hosting the website for the entire 2000 season, Defendant never signed the MSA. (Compl. at ¶ 23, see also signature page 26 of Exh. B.) It appears Plaintiff has not signed it either. (*Id.,* Exh. B at 26.) Defendant also allegedly never

paid the $600,000 annual fee. (*Id.* at ¶ 25, 30.)

### B. Procedural Background

Plaintiff filed its complaint in this Court on August 1, 2001. The Complaint contains four Counts: Count I—Breach of Contract; Count II—Breach of Contract (Implied Promise); Count III—Promissory Estoppel; Count IV (misnumbered V)—Unjust Enrichment.

In lieu of answering the Complaint, Defendant filed the instant motion to dismiss on September 7, 2001. The Court set the motion for oral argument on December 19, 2001. However, on December 11, 2001, the Court issued an Order to Show Cause.[4] That Order required the parties to explain to the Court why their briefs rely on Illinois, rather than Michigan law, because the briefs had failed to set forth a conflicts of laws analysis. The parties responded to the Order as required, on December 20, 2001 and January 3, 2002. Thereafter a new notice was sent to the parties setting the oral argument for April 5, 2002.

## II. ANALYSIS

### A. Standard of Review of Rule 12(b)(6) Motion

Defendant filed the instant motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion alleges that a complaint has failed to state a claim upon which relief can be granted. In evaluating such a motion, the court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations

---

**3.** Adjusted gross revenue, as defined on page 1 of the MSA, means "Gross Revenue less all expenses incurred by Ignite in connection with the Web Site other than Expenses and the Annual Fee." (MSA, Exh. B at 1.) Expenses are defined as Defendant's costs in producing/hosting the website (cap of

$400,000, mentioned *supra* ), and the annual fee is the $600,000 mentioned *supra*. (*Id.* at 1–2.)

**4.** That Order to Show Cause, due to the Court's analysis of the conflict of laws issue herein, is hereby SET ASIDE.

in the complaint as true, and "should not [grant the motion] unless is appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir.1998).

The purpose of a 12(b)(6) motion is "to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993). Accordingly, when reviewing a 12(b)(6) motion to dismiss, the court only examines whether the pleadings state a claim for which relief may be granted, and does not review additional evidence. *See Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir.1997). "As the First Circuit stated, '[w]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.'" *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 437 (6th Cir.1988) (quoting *O'Brien v. DiGrazia,* 544 F.2d 543, 546 n. 3 (1st Cir.1976)).

Rule 8 expressly allows for alternative pleading:

A party may set forth two or more statements of a claim ... alternatively or hypothetically, either in one count ... or in separate counts .... When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims ... as the party has regardless of consistency ....

Fed.R.Civ.P. 8(e)(2). In other words, a pleading does not become insufficient by reason of a party having made alternative, or even contradictory, claims. *See Rowe v. Cleveland Pneumatic Co.,* 690 F.2d 88, 92 (6th Cir.1982).

The Court finds, based on the analysis below, that Plaintiff's Complaint is not subject to dismissal in its entirety. Defendant's attempt to argue otherwise is unavailing. Plaintiff has pleaded in the alternative; either there is an express contract between the parties (Count I—Breach of Contract), or else Plaintiff is entitled to a quasi-contractual remedy (Counts II, III, or IV, for Breach of Implied Contract, Promissory Estoppel, and/or Unjust Enrichment, respectively). For these reasons, granting dismissal of the entire Complaint is not a proper disposition in the instant case. For the reasons set forth below, Count III for promissory estoppel is DISMISSED; the rest of the Counts survive the instant motion.

## B. Conflicts of Laws Analysis

■ Federal courts sitting in diversity apply the conflict of law rules of the forum state. *See Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 490, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Johnson v. Ventra Group, Inc.,* 191 F.3d 732, 738 (6th Cir. 1999). Michigan courts generally enforce contractual choice of law provisions. *Johnson,* 191 F.3d at 739. However, in the absence of a binding choice of law provision in a contract, the Court must apply Michigan law, "unless a rational reason for doing otherwise exists." *Sipes v. Kinetra, L.L.C.,* 137 F.Supp.2d 901, 906 (E.D.Mich.2001); *R & D Distributing Corp. v. Health–Mor Indus., Inc.,* 118 F.Supp.2d 806, 808 (E.D.Mich.2000) (citing *Hall v. General Motors Corp.,* 229 Mich.

App. 580, 582, 582 N.W.2d 866 (Mich.Ct. App.1998)).

■ Michigan has adopted the approach taken in the Restatement (Second) of Conflict of Laws. *Johnson*, 191 F.3d at 738–39; *Sipes*, 137 F.Supp.2d at 906. The Restatement has two potentially applicable sections. Section 187, entitled "Law of the State Chosen by the Parties," reads as follows:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or
>>
>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of s 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.
>
> (3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

Restatement 2d of Conflicts, § 187. By its terms, this section applies when the parties have chosen the state to govern the contract.

In the instant case, although the M.S.A. § includes a choice of law provision providing for the application of Illinois law, the M.S.A. § is not signed by either party. The central dispute in this case is whether a contract existed at all. Given these circumstances, the Court should find that the parties have not agreed to a contractual choice of law provision. *See R & D Distributors v. Health–Mor Industries, Inc., supra*, 118 F.Supp.2d 806 (E.D.Mich.2000) ("[T]he parties disagree about whether a contract ... existed at all.... The Court concludes, therefore, that the parties have not chosen another state's law to govern their contract.").

The Restatement also has an alternate section, entitled "Law Governing in Absence of Effective Choice by the Parties," which provides:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.
>
> (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
>> (a) the place of contracting,
>>
>> (b) the place of negotiation of the contract,
>>
>> (c) the place of performance,
>>
>> (d) the location of the subject matter of the contract, and
>>
>> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.
>
> (3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as

otherwise provided in §§ 189–199 and 203.

Restatement 2d of Conflicts, § 188.

In *Sipes,* the court undertook the above analysis to determine whether to apply Michigan or Colorado law to the alleged contracts at issue. *Sipes,* 137 F.Supp.2d at 906. The court determined that because, *inter alia,* the primary place of performance and the subject matter of the alleged contracts were in Colorado, the totality of the factors, and the Plaintiff's failure to adduce any evidence that Michigan law should be applied, lead to the application of Colorado law to the contractual dispute. *Id.*

In the instant case, a review of the above-noted factors leads to the application of Illinois law. The most compelling allegation is that the transaction at issue (hosting of the website) was to be performed in Illinois, at Defendant's place of business. Most of the requirements of the alleged agreement were to be performed in Illinois. Defendant's Illinois attorneys drafted the LOI and the MSA. The parties do not allege where the negotiations took place. The only connection to Michigan is that it is Plaintiff's principal place of business. Plaintiff has not supplied any evidence that Michigan would have a greater interest in having its law applied to the instant dispute than would Illinois.

Therefore, the Court finds, on the basis of these undisputed facts, that a "rational reason" exists for the application of Illinois law.

## C. Analysis of the Separate Counts

### 1. Count I—Breach of Contract

#### a. Statute of Frauds Does Not Apply

Preliminarily, the Court notes that the alleged contract at issue falls outside of Illinois' statute of frauds. Illinois' statute of fraud provides, in relevant part:

No action shall be brought ... upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith.

740 ILL. COMP. STAT. ANN. 80/1. Because the transaction at issue in this case was performed in less than a year (i.e., from at the earliest, January of 2000, to at the latest October of 2000), it falls outside of the statute of frauds. *See Sinclair v. Sullivan Chevrolet Co.,* 45 Ill.App.2d 10, 14, 195 N.E.2d 250 (1964).

The parties have both discussed *Consolidated Bearings Co. v. Ehret–Krohn Corp.,* 913 F.2d 1224 (7th Cir.1990). Defendant asserts that *Consolidated Bearings* stands for the proposition that without a signature, a contract is unenforceable. The sentence quoted by Defendant actually reads, in its entirety, "The statute of frauds requires only the signature of the party to be charged, and Illinois courts have held that a contract signed by the party to be charged may be enforced against him even if the complaining party did not sign it and even if it falls outside the statute of frauds." *Id.* at 1231. The sentence does not purport to set down a rule requiring a signature to any contract—only to contracts governed by the statute of frauds. Because, as noted above, the statute of frauds does not apply to the instant case, this sentence of *Consolidated Bearings* does not support Defendant's position.

#### b. Elements of Breach of Contract

Under Illinois law, in order to plead a cause of action for breach of contract, the plaintiff must allege the existence of a valid contract, that plaintiff performed its obligations, that defendant breached the

contract, and that plaintiff suffered damage as a result. *Talbert v. Home Savings of America, F.A.*, 265 Ill.App.3d 376, 379, 202 Ill.Dec. 708, 638 N.E.2d 354 (Ill.Ct. App.1994). The elements for a valid contract are "competent parties, valid subject matter, legal consideration, mutuality of obligation, and mutuality of agreement." *Presley v. P & S Grain Co.*, 289 Ill.App.3d 453, 464, 225 Ill.Dec. 398, 683 N.E.2d 901 (Ill.Ct.App.1997). In the instant case, the parties do not dispute the competent parties, valid subject matter, legal consideration, or mutuality of obligation elements. The element at issue is the mutuality of agreement.

Mutuality of agreement is "the mutual assent by the parties to its terms." *Id.* The Restatement (Second) of Contracts provides:

Conduct as Manifestation of Assent

(1) The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act.

(2) The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.

(3) The conduct of a party may manifest assent even though he does not in fact assent. In such cases a resulting contract may be voidable because of fraud, duress, mistake, or other invalidating cause.

Restatement 2d Contracts, § 19. It is the objective manifestation of assent that is determinative, not the subjective intention of the party. *See, e.g., In re Mount Calvary Baptist Church,* 162 B.R. 181, 188 (Bankr.N.D.Ill.1993) (applying the Restatement language).

■ A signature on the contract is not a *per se* prerequisite to enforcement. *See Lynge v. Kunstmann,* 94 Ill.App.3d 689,

694, 50 Ill.Dec. 146, 418 N.E.2d 1140 (Ill. Ct.App.1981) (quoted in *Consolidated Bearings Co. v. Ehret–Krohn Corp.,* 913 F.2d 1224, 1231 (7th Cir.1990)):

The real question is, absent language in the contract, what was the intention of the parties as to whether there was a binding contract ...? Ordinarily one of the acts forming part of the execution of a written contract is the signing of it. However, *a signature is not always essential to the binding force of an agreement. Whether a writing constitutes a binding contract, even though it is not signed, or whether the signing of the instrument is a condition precedent to its becoming a binding contract usually depends upon the intention of the parties.* The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, as, for example, *by acts or conduct of the parties.*

The law is clear in Illinois that where the parties reduce the agreement to writing and its signature by them is a condition precedent to its completion, no contract will exist until that is done. It has been held that questions of intent are particularly inappropriate for summary judgment.

*Lynge,* 94 Ill.App.3d at 694, 50 Ill.Dec. 146, 418 N.E.2d 1140 (internal citations omitted, emphasis added). Thus, it is clear that acts or conduct of the parties may meet the requirement for mutual assent.

■ In the instant case, Plaintiff has pleaded facts which, if proven, would entitle it to relief on its breach of contract claim. Plaintiff alleges that although the M.S.A. § was never signed, Defendant manifested it assent to, and its intent to be bound by, the M.S.A. § by: (1) sending the M.S.A. § to the MLB for approval, and (2) behaving as if there were a contract in force, by creating and hosting the website, which is the subject of the MSA. These

allegations sufficiently allege evidence of an objective manifestation of assent to the MSA.

. Defendant argues that the lack of the signature is fatal, because the LOI contemplated "execution" of a formal contract as a prerequisite to contractual obligations. Defendant is generally correct that if a preexisting contract between the parties makes signature of a formal agreement a condition precedent to the formation of a contract, then the absence of the signature will prevent enforcement of the contract. *See, e.g., Bennett & Kahnweiler, Inc. v. American Nat'l Bank & Trust Co. of Chicago,* 235 Ill.App.3d 896, 905–06, 176 Ill. Dec: 112, 601 N.E.2d 810 (Ill.Ct.App.1992) (brokerage agreement provided commission payable only if lease was "negotiated and fully executed"; no lease was executed, thus, plaintiff had no contractual claim for the commission); *Lynge,* 94 Ill.App.3d at 694, 50 Ill.Dec. 146, 418 N.E.2d 1140. However, the LOI does not contain the kind of limiting language it would need in order to support Defendant's position here. Instead, the only enforceable paragraph in the LOI provides: (1) that the parties would not be responsible for each other's expenses "[i]f the proposed transaction shall not be consummated;" (2) neither party would be liable to the other "based on failure to ultimately consummate the transaction;" and (3) "performance of [a] party prior to execution of formal contract [sic] of any of the obligations which may be included in a contract between the parties when negotiations are completed shall not be considered as evidence of intent by either party to be bound *by this LOI* ...." (LOI, Exh. B at 5, emphasis added.) There is no language making "signature" or even "execution" of a future agreement a condition precedent to a future contractual relationship.

Rather, the LOI contemplates "consummation." Consummation could be accomplished, under Illinois law, by Defendant's "acts or conduct." *Lynge, supra.* Nothing in the LOI counteracts this. Furthermore, the limiting language in (3), *supra,* prevents Plaintiff from suing to enforce *the LOI* as a written contract, not from suing to enforce a resulting agreement. Plaintiff is not suing to enforce the LOI as the written contract; Plaintiff is suing to enforce the MSA. Plaintiff's mention of the LOI in its allegations for breach of contract is not fatal to its claim. The existence of the LOI does not prevent Plaintiff from being able to enforce the MSA.

Based on the above analysis, the Court DENIES Defendant's motion to dismiss Count I for breach of contract. Plaintiff has properly pleaded this cause of action, and has alleged facts which, if proven, would entitle Plaintiff to recover on a breach of express contract theory.[6]

---

**6.** The parties are apparently under the assumption that this Court will determine, in this motion, whether the M.S.A. § is enforceable as a matter of law. However, that is inappropriate for a motion to dismiss under Rule 12(b)(6). The question is not whether Plaintiff would ultimately prevail in providing evidence that Defendant objectively manifested assent to the MSA; the question is whether Plaintiff has sufficiently alleged facts which, if proven, would permit recovery. The question of whether the M.S.A. § equals the contract, is left for another day.

This also means that the Court cannot, at this point, transfer the case to Illinois based on the forum selection clause in the MSA. The Court cannot decide, without any evidence before it, that the parties agreed to the forum selection clause, separate from the unsigned MSA.

Similarly, this is not the appropriate time to be determining what the terms of any alleged agreement were. There is no evidence before the Court to make this determination. Defendant's assertion that the parties did not agree on the essential terms, such as price, would be a ground for a summary judgment motion, once the parties have proceeded through discovery. However, Rule 12 requires the Court

### 2. Count II—Breach of Implied Contract

As noted above, Plaintiff is permitted to plead alternative theories of recovery under Rule 8. Plaintiff's implied-in-fact contract theory is alternative to its breach of express contract. The fact that Plaintiff references the MSA/LOI in the breach of implied-in-fact contract claim does not make it inherently defective. It is true that once the existence of an express contract is established, either by the parties' admissions or by judicial finding, quasi-contractual remedies are unavailable.[7] *See, e.g., Prentice v. UDC Advisory Servs. Inc.,* 271 Ill.App.3d 505, 512, 207 Ill.Dec. 690, 648 N.E.2d 146 (1995). However, this does not mean that · a defendant can effectively avoid suit by, at the same time, refusing to admit the existence of a contract, and asserting that because a contract is alleged, no quasi-contractual claims will lie. In order for the quasi-contractual remedies to disappear, Defendant would have to admit the existence of an express contract (which it has not done) or this Court (or a jury) would have to find that an express contract exists (which is not a proper finding at the motion to dismiss stage).

Under Illinois law, an implied-in-fact contract is one which imposes contractual terms by reason of the parties' promissory expressions, inferred from the facts, circumstances, and expressions that the parties intend to be bound. *See U.S. Fidelity & Guar. Co. v. Continental Casualty Co.,* 198 Ill.App.3d 950, 957, 145 Ill.Dec. 53, 556 N.E.2d 671 (Ill.Ct.App.1990) (hereinafter *"USF & G "*). As explained in *Century 21 Castles by King, Ltd. v. First Nat'l Bank of Western Springs,* 170 Ill.App.3d 544, 121 Ill.Dec. 174, 524 N.E.2d 1222 (Ill. Ct.App.1988):

> The only difference between an express contract and a contract implied in fact is that in the former the parties arrive at their agreement by words, either oral or written, while in the latter, their agreement is arrived at by a consideration of their acts and conduct. Thus, a contract implied in fact arises not by express agreement but, rather, by a promissory expression which may be inferred from the facts and circumstances which show an intent to be bound.

> On the other hand, a contract implied in law exists from an implication of law that arises from facts and circumstances independent of an agreement or consent of the parties; the intention of the parties is entirely disregarded. A contract implied in law is not a contract at all and is sometimes referred to as a quasi contract or constructive contract, and, historically, there being nothing else available, courts have allowed the action of assumpsit as a basis for recovery. The term quantum meruit means literally "as much as he deserves" and is an expression that describes the extent of liability on a contract implied in law; it is predicated on the reasonable value of services performed. Recovery is founded on the implied promise of the recipient of services or materials to pay for something which he has received that is of value to him.

> . . . [I]t is clear that Century 21 adequately alleged acts and conduct of both parties which gave rise to the implication that a contract did exist. Thus, we

---

to take all well-pleaded facts in the complaint as true; one of the well-pleaded facts is that the parties agreed to the essential terms (such as the $600,000 price term).

**7.** · All other cases cited by Defendant similarly hold that if it is undisputed (*both* parties agree) that a contract exists, the quasi-contractual remedies are unavailable as a matter of law. Those cases are not beneficial to Defendant's current position in this case.

reject the Bank's argument that a contract implied in fact was not pleaded. *Id.* at 548, 121 Ill.Dec. 174, 524 N.E.2d 1222. If a complaint fails to allege "any acts, conduct or circumstances ... [from] which [one could] infer [an] intent to be bound," then the implied-in-fact contract claim is subject to dismissal. *See USF & G, supra,* at 957–58, 145 Ill.Dec. 53, 556 N.E.2d 671.

■ Plaintiff's allegations for an implied-in-fact contract are that, regardless of any LOI or MSA, Defendant provided website hosting for Plaintiff for the 2000 baseball season. Plaintiff licensed its trademarks, logos, etc., for this purpose. Thus, both parties acted as if a contract was in place. The terms of that contract are to be determined at a later date, with or without reference to the MSA/LOI; however, an agreement must have existed between the parties because the parties, as is evident from the facts and circumstances of the existence of this sophisticated commercial transaction, intended to contract with each other. Plaintiff is simply arguing that if the M.S.A. § is not the express contract governing the parties, the Court may still find the parties were acting as if a contract existed, and thus, the Court (or the jury) must determine what its terms were. Plaintiff goes on to allege that one of the terms is payment to Plaintiff of $600,000. That Defendant disputes this term is immaterial to the current motion. That Defendant subjectively believes it did not manifest any intent to be bound, "meeting of the minds," etc., is similarly irrelevant to the instant motion.

For these reasons, the Court concludes that Plaintiff has properly pleaded, in the alternative, a cause of action for breach of an implied-in-fact contract claim; the Court therefore DENIES Defendant's motion to dismiss this count.

### 3. Count III—Promissory Estoppel

This is the only count of the complaint which is subject to dismissal.

■ As explained in *Prentice v. UDC Advisory Servs. Inc.,* 271 Ill.App.3d 505, 207 Ill.Dec. 690, 648 N.E.2d 146 (1995), while pleading promissory estoppel and breach of contract in the alternative is generally permissible:

[P]romissory estoppel is a method to enforce promises that do not meet the requirements of consideration. It is not intended to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract.

*Id.* at 512, 207 Ill.Dec. 690, 648 N.E.2d 146. The court further explained: "It is, of course, irrelevant whether plaintiffs will ultimately prove a breach of the contract since it is the existence of consideration and not the existence of a breach which precludes reliance on the theory of promissory estoppel." *Id.* at 513 n. 2, 207 Ill.Dec. 690, 648 N.E.2d 146. The court also held that if the plaintiff was already obligated to do a particular thing, the doing of that act "could never be deemed 'detrimental reliance' .... Promissory estoppel cannot be based upon a promise which only induces plaintiffs to do that which they were already legally bound to do." *Id.* at 514, 207 Ill.Dec. 690, 648 N.E.2d 146.

■ In the instant case, Plaintiff has alleged the existence of consideration within the promissory estoppel claim: Plaintiff refrained from contracting with any other company for its website hosting for 2000 in exchange for Defendant's agreement to pay the $600,000 fee while hosting the website. (*See* Compl. ¶¶ 38, 40.) This exchange of promises constitutes consideration. Furthermore, the LOI specifically obligated Plaintiff not to negotiate/contract with another company for its website host-

ing, in the only enforceable paragraph in the document:

> The Tigers will not negotiate with any other party for any internet services or arrangements during the period between the signing of this LOI and execution of a binding contract.... Except for matters set forth in this paragraph this LOI does not create a legal, binding obligation on either party ....

(LOI, Exh. A to Compl., at 4–5.)

Therefore, because Plaintiff alleges consideration, and because Plaintiff's detrimental reliance was something it was already contractually bound to refrain from doing, Plaintiff's promissory estoppel claim is defective as a matter of law. The Court DISMISSES this claim.

### 4. *Count IV—Unjust Enrichment*

■ Unjust enrichment is an equitable remedy. Under Illinois law, the elements of an unjust enrichment claim are: "the defendant unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience." *B & B Land Acquisition Inc. v. Mandell*, 305 Ill.App.3d 1068, 1073, 239 Ill.Dec. 500, 714 N.E.2d 58 (Ill.Ct.App.1999). Unjust enrichment cannot co-exist with an express contract; they must be pleaded in the alternative. *Id.; see also In re Apex Automotive Warehouse, LP*, 205 B.R. 547, 556–57 (Bankr. N.D.Ill.1997).

Plaintiff has properly pleaded this count in the alternative. Plaintiff alleges that even if there is no express contract, and even if the Court determines that there was no implied-in-fact contract, Plaintiff still licensed its trademarks, logos, etc. to Defendant and has not received any remuneration for that. Plaintiff alleges that it has suffered because Defendant has not compensated Plaintiff for the use of Plaintiff's "tangible and intangible property."

(Compl.¶ 44.) This count is not subject to dismissal; the Court will therefore DENY Defendant's motion to dismiss this claim.

### III.  CONCLUSION

In conclusion, Plaintiff has sufficiently alleged either (1) the M.S.A. § is the express contract between the parties, and Defendant has manifested assent to it by sending it to the MLB for approval, and performing under it; or (2) there is no express agreement, but because the parties acted as if there was an agreement in operation, then there was an implied-in-fact contract; or (3) if there was no express contract, and no implied contract, then Defendant was unjustly enriched by hosting Plaintiff's website without paying Plaintiff for the licensing of its trademarks, logos, etc., and should be required to remit the unjust enrichment to Plaintiff. While Plaintiff will not be able, ultimately, to recover on more than one of these theories, at the present stage of the litigation, Plaintiff does not have to pick the theory on which it wishes to proceed. Plaintiff has sufficiently alleged Counts I, II, and IV.

For the reasons stated above, the Court therefore GRANTS IN PART and DENIES IN PART the motion: specifically, Count III for promissory estoppel is DISMISSED. All other Counts survive the instant motion.

**SO ORDERED.**