SECOND DIVISION
March 27, 2007

No. 1-06-1200

| | | |
|---|---|---|
| HEDLUND AND HANLEY, LLC, and | ) | |
| REUBEN L. HEDLUND, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| v. | ) | |
| | ) | |
| THE BOARD OF TRUSTEES OF COMMUNITY | ) | |
| COLLEGE DISTRICT NO. 508, THE COUNTY OF | ) | Honorable |
| COOK, AND THE STATE OF ILLINOIS, | ) | John A. Ward, |
| | ) | Judge Presiding. |
| Defendant-Appellee. | ) | |

JUSTICE SOUTH delivered the opinion of the court:

Plaintiffs, Hedlund & Hanley, LLC (H&H), and Reuben Hedlund (Hedlund), appeal from the trial court's entry of summary judgment in favor of defendants, the Board of Trustees of Community College District No. 508, the County of Cook and the State of Illinois (collectively, City Colleges).

The facts as stated in the trial court's written memorandum decision[1] are as follows: prior to August 19, 1994, City Colleges retained the law firm of Hedlund, Hanley & John (HH&J) to represent it in litigation arising from accounting malpractice. Reuben Hedlund was the principal attorney at HH&J. After recovering over $4 million from Prudential Securities, City Colleges asked HH&J to provide further representation in the prosecution of its claims against other

---

[1] The trial court noted that its statement of facts was taken largely from Hedlund's amended petition for attorney fees and City Colleges' renewed motion for summary judgment on the amended petition for attorney fees.

parties. A letter from Hedlund dated August 19, 1994, provided that HH&J would be paid at 20% less than its "standard rates," and if City Colleges recovered "an amount greater than $1 million more than the HH&J fees at 100% of its standard rates," HH&J would be paid at its full standard rate. Further, the letter provided that if City Colleges recovered "an amount greater than $5 million more than HH&J fees over standard rates," City Colleges would "consider a bonus request...based upon results achieved, efficiency of our work, the prior discount provided and overall reasonableness." The letter further provided that there was "no commitment by [City Colleges] to favorably consider any such request, if made, or any obligation to honor such request."

In 2000, the law firm of HH&J dissolved, and Hedlund continued in the practice of law as the senior partner in a law firm then named Hedlund, Hanley and Trafelet (HH&T). Subsequently, a new fee arrangement was negotiated between City Colleges and HH&T. That arrangement was set forth in a letter which was drafted and signed by Reuben Hedlund and sent to James D. Shepherd, counsel for City Colleges, on August 11, 2000. In that letter, Hedlund stated that: "Specifically, my time will be billed at $304 per hour and that of Steve Ma at $136 per hour." This letter also sets forth the following provision, which is central to the dispute in the instant case: "While there would be no commitment to do so, we would hope that, at the conclusion of the litigation, City Colleges would give favorable consideration to a bonus request from my firm based upon results achieved, efficiency of our work at the hourly rates approved, and overall reasonableness." The letter concludes, "Please confirm your agreement with the arrangements described herein by signing below and returning this letter to me." Below was a

single signature line for Mr. Shepherd and the notation "cc: Mr. James C. Tyree, Wayne Watson, Ph.D., Terry E. Newman, Esq." These three persons were on the board of directors for City Colleges at the time the letter was written. No signed copy of the letter was ever returned to Hedlund.

From August 2000 to February 2004, Hedlund sent invoices to City Colleges reflecting the hourly rates set forth in the August 2000 letter, as well as the expenses incurred and time billed. Each invoice was reviewed, approved, and signed off on by the City Colleges' general counsel and submitted to and approved by the City Colleges' board of trustees. City Colleges issued checks to Hedlund that were signed by James Tyree, the chairman of the board, for the hourly fees and expenses set forth in each invoice.

On the eve of trial in the underlying matter in November 2000, Hedlund was able to obtain a settlement of City Colleges' claim against the accounting firm of Arthur Anderson for a substantial but confidential amount, and the claims against Anderson were dismissed. The case proceeded against Coopers, another accounting firm. At the end of the five-week trial, the jury awarded City Colleges $13,028,000 against Coopers, and a judgment was entered on December 7, 2000, by the trial court in the full amount of the jury's award. Defendant's posttrial motions were all denied by the trial court, and the judgment was affirmed by this court in July 2002.

On April 1, 2002, HH&T, then known as Hedlund, Hanley, Knoenigsknectht & Trafelet (HHK&T), ceased to exist. Hedlund, who became managing director of the new firm of Hedlund & Hanley (H&H), continued to represent City Colleges in the litigation. On December 18, 2003, the supreme court affirmed this court's decision in the underlying litigation, with the direction

that the amount of the settlement made with defendant Anderson be deducted from the judgment against Coopers.

Thereafter, in subsequent settlement negotiations, City Colleges accepted Coopers' offer to settle for an amount that brought City Colleges' total recovery in the litigation to over $15 million. By the conclusion of the litigation in January 2004 and before a final order or judgment was entered in this action, the total net amount recovered by City Colleges since the commencement of Hedlund's representation was in excess of $19 million. Hedlund met with Chairman Tyree on January 29, 2004, to review and explain the terms and implications of the final draft of the settlement agreement as proposed by Coopers' counsel. At the meeting, Hedlund submitted a written request for an "efficiency bonus" in the amount of $281,606.89 based upon the August 11, 2000, agreement. As the meeting concluded, Chairman Tyree stated that the bonus request would be granted if "logic dictated." Subsequently, the bonus request was denied.

On February 24, 2004, Chairman Tyree again met with Hedlund, and again denied the bonus request but accepted Hedlund's suggestion of presenting City Colleges with an invoice covering the bonus. On the same day, that invoice was submitted to the City Colleges' general counsel and denied. Hedlund then filed a petition for attorney fees in the underlying litigation on April 7, 2004. In that petition, Hedlund alleged that "in August 2000, City Colleges requested that it pay the new firm, HH&T, at preset rates, which, in fact, were substantially below the then standard hourly rates of Mr. Hedlund and the other lawyers at HH&T and, because they were preset, would not increase as the firm's rates increased over the next three years that the case

continued to pend." Further, City Colleges declined to continue with its 1994 agreement that it would pay the firm's full hourly rate in the event it recovered an amount greater that $1 million more than the HH&J fees at 100% of its standard rates. Hedlund also alleged the following: "Accordingly, on August 11, 2000, a new fee agreement, stating the above provisions, was confirmed in a letter from Hedlund to James D. Shepherd, acting General Counsel of City Colleges, with copies to James C. Tyree, the new Chairman of the Board, Wayne Watson, Ph.D., the new Chancellor, and Terry Newman, a member of the Board and a lawyer licensed to practice in Illinois." Hedlund further alleged that "petitioners are presently unable to locate a [signed] copy of the August 11, 2000, letter. However, performance by City Colleges and Hedlund and HH&T was thereafter in accordance with the terms in the letter."

After the trial judge was transferred to the chancery division of the circuit court, Hedlund and H&H filed an action for attorney fees in lieu of pursuing the petition for attorney fees filed in the underlying litigation. In the complaint, plaintiffs alleged that City Colleges flatly refused to undertake any good-faith, fair, or reasonable consideration of their bonus request, and specifically, has never considered the request based upon the "results achieved, efficiency of [their] work at the hourly rates approved, and overall reasonableness," as required by the August 11, 2000, letter. Plaintiffs contended that this wrongly deprived them of the economic benefit which the parties intended to be provided to them under the fee letter and also resulted in a windfall to, and unjust enrichment of, City Colleges (*quantum meruit*). According to plaintiffs, City Colleges' failure to consider and/or to pay a reasonable bonus allows City Colleges to profit from its own wrongdoing in that it misled plaintiffs into believing it would honor and give fair

5

and reasonable consideration to a request for a bonus in compliance with the August 11, 2000, letter. Additionally, plaintiffs contended that City Colleges' failure to give good-faith consideration to the bonus request constituted a breach of its agreement with plaintiffs, which entitled them to have and recover the amount of a reasonable bonus in an amount no less than $300,000. Plaintiffs further contended that City Colleges was barred by the doctrine of promissory estoppel from denying liability to plaintiffs for a reasonable bonus. The plaintiffs valued their award under the *quantum meruit* theory at no less than $457,000. Both parties subsequently filed cross-motions for summary judgment, and the trial court granted summary judgment in favor of City Colleges.

In granting City Colleges' motion for summary judgment, the trial court made the following findings: (1) that the letter of August 11, 2000, was an express contract between the parties; (2) that Hedlund was estopped from contesting whether the August 11, 2000, letter was binding on the parties; and (3) that the language in the letter regarding a bonus was not enforceable by the court since it was the manifest intent of the parties to give the Board unfettered discretion on the issue of whether a bonus would be paid. Summary judgment was then granted in favor of City Colleges on all counts.

Plaintiffs make two contentions on appeal. First, they contend that the trial court erred in finding that the August 11, 2000, letter became a binding contract. Specifically, they argue that there was no formal board approval of the contract, which was necessary for contracts over $10,000; that the parties' conduct did not create an express, binding contract; and that they are entitled to compensation under *quantum meruit*. Plaintiffs further contend that the trial court

erred in ruling that City Colleges was not required to undertake a good-faith consideration of the bonus request, specifically arguing that the trial court should have considered the circumstances surrounding the letter; that the trial court was required to give meaning to all language in the letter; that the covenant of good faith and fair dealing required a construction of the contract giving meaning to the consideration of a bonus; and that City Colleges breached the covenant of good faith and fair dealing by failing to consider a bonus.

The trial court granted summary judgment in favor of City Colleges on all counts of the complaint. Thus, the issue for this court's consideration is whether the trial court properly granted summary judgment on the basis that the August 11, 2000, letter constituted a contract between the parties and vested the Board with discretion to consider a bonus request. We apply a *de novo* standard when reviewing summary judgment motions. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102 (1992).

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Telenois, Inc. v. Village of Schaumburg, 256 Ill. App. 3d 897, 901 (1993). The purpose of summary judgment is not to try an issue of fact, but rather to determine whether a triable issue exists. Telenois, 256 Ill. App. 3d at 901. Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied. Telenois, 256 Ill. App. 3d at 901.

Summary judgment should only be granted if the pleadings, depositions, and the admissions on file, together with affidavits, if any, present no genuine issue of material fact, thereby entitling the moving party to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West

2004). The reviewing court takes all well-pleaded facts as true and interprets all well-pleaded allegations in the light most favorable to the plaintiff. McMahon v. City of Chicago, 339 Ill. App. 3d 41, 45 (2003). While use of summary judgment is encouraged under Illinois law to aid in the expeditious disposition of a lawsuit (Purtill v. Hess, 111 Ill. 2d 229, 240 (1986)), it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt (Quality Lighting, Inc. v. Benjamin, 227 Ill. App. 3d 880, 883-84 (1992)).

Plaintiffs first contend that the trial court erred in concluding that an express binding contract existed between the parties as a result of the August 11, 2000, letter.[2] Our inquiry is whether, as a matter of law, a contract existed between the parties.

Whether a contract exists, its terms and the intent of the parties are questions of fact to be determined by the trier of fact. In re Marriage of Gibson-Terry, 325 Ill. App. 3d 317, 322 (2001). A trial court's findings of fact will not be reversed unless they are against the manifest weight of the evidence. Eyechaner v. Gross, 202 Ill. 2d 228, 251 (2002). A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence. Eyechaner, 202 Ill. 2d at 252.

In the case at bar, the trial court determined that plaintiffs' fee letter of August 11, 2000, in which it set forth the fee agreement between the parties, constituted a binding contract.

---

[2] Plaintiffs are apparently abandoning the initial contention raised in its complaint, *i.e.,* that City Colleges breached its contract with plaintiffs, and instead focus on their alternate contention that no valid contract existed and they are entitled to recover under *quantum meruit*.

Plaintiffs disagree, contending that the Board never formally approved it, and further, that the parties' conduct did not constitute a contract.

In order to form a contract, there must be an offer, a strictly conforming acceptance, and consideration. Brody v. Finch University of Health Sciences/Chicago Medical School, 298 Ill. App. 3d 146, 154 (1997). Ordinarily, one of the acts forming part of the execution of a written contract is its signing. Lynge v. Kunstmann, 94 Ill. App. 3d 689, 694 (1981). Whether a writing constitutes a binding contract, even though it is not signed, as is the situation presented in the present case, usually depends upon the intention of the parties. Lynge, 94 Ill. App. 3d at 694. "The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, [such] as *** by acts or conduct of the parties." Lynge, 94 Ill. App. 3d at 694. See also 17 C.J.S. Contracts § 62 (1963); 12 Ill. L. & Prac. Contracts § 65 (1955).

Turning to the instant case, there is no dispute that plaintiffs' August 11, 2000, letter set forth the fee agreement between the parties. There is also no dispute that plaintiffs requested that the letter be signed and returned upon City Colleges' agreement to the fee arrangements, or that the letter was never signed by the Board. However, the record indicates that the parties intended for the August 11, 2000, letter to be binding in several ways. First, plaintiffs continued representing City Colleges and billed them according to the fee schedule set forth in the letter. Second, City Colleges paid the invoices presented by plaintiffs according to the fee schedule set forth in the letter. This agreement continued for almost four years, with City Colleges continuing to pay each invoice submitted by plaintiffs, thereby assenting to its terms. Moreover, plaintiffs

continually referred to the August 11, 2000, letter as governing their retention.

Plaintiffs further contend, however, that City Colleges could not enter into a binding contract for more than $10,000 without formal board approval as required by statute. This contention is negated by the statute itself. The Public Community College Act (Act) (110 ILCS 805/1 *et seq*. (West 2004)) relates to the establishment, operation and maintenance of public community colleges. Section 3-27.1 of the Act sets forth the duties of the community college districts as they relate to contracts in relevant part below:

> "§3-27.1. Contracts. To award all contracts for purchase of supplies, materials or work involving an expenditure in excess of $10,000 to the lowest responsible bidder considering conformity with specifications, terms of delivery, quality, and serviceability; after due advisement, except the following: (a) contracts for the services of individuals possessing a high degree of professional skill where the ability or fitness of the individual plays an important part ***." 110 ILCS 805/3-27.1 (West 2004).

According to the statute, community college districts have a duty to award contracts for purchase of supplies, materials or work for more than $10,000 to the lowest responsible bidder after due advisement. The statute then carves out an exception for contracts for the "services of individuals possessing a high degree of professional skill." Nowhere does the statute require formal Board approval to enter into these contracts, although it does require that those contracts be awarded through a competitive bidding process. We conclude this argument is without merit.

1-06-1200

Similarly, plaintiffs' argument that the City Colleges operations manual, which requires formal Board approval of contracts, supports their contention that there was no valid contract is also without merit. The manual provides in pertinent part as follows:

> "No purchases shall be made except as provided by Illinois Law, Board Rules and these policies and procedures for purchasing. No officer or employee not expressly authorized by Illinois law, Board rules and these policies and procedures shall make any purchase on behalf of the Board of Trustees of Community College District No. 508, County of Cook and State of Illinois or enter into any contract of purchase, verbal or written, for any apparatus, equipment, supplies, service or repairs, goods, wares or merchandise of any kind or description, or accept any of them on approval or otherwise. <u>Any contract, verbal or written, made in violation of Illinois law, Board rules and/or these policies and procedures for purchasing is void as to the Board of Trustees of Community College District No. 508, County of Cook and State of Illinois</u>."
> (Emphasis added.)

While we agree with plaintiffs' assertion that the manual requires Board approval of contracts, we find that the terms of the manual were not violated in this case because the Board assented to the contract, as explained above, in approving and paying plaintiffs' invoices for almost four years.

11

1-06-1200

Accordingly, we conclude that the trial court's determination that the August 11, 2000, letter was an express, binding contract was not against the manifest weight of the evidence. It then follows that plaintiffs' claims for relief under *quantum meruit* must fail because when a contract exists between the parties, no quasi-contractual claim, such as *quantum meruit* can arise. Mid-West Energy Consultants, Inc. v. Covenant Home, Inc., 352 Ill. App. 3d 160, 166 (2004).

As we have concluded that the August 11, 2000, letter constituted a binding contract, our inquiry turns to the terms of the contract, specifically, whether consideration of a bonus was required.

"Traditionally, Illinois courts, when interpreting contracts, have required that '[a written agreement] must be presumed to speak the intention of the parties who signed it.' " Nebel, Inc. v. Mid-City National Bank of Chicago, 329 Ill. App. 3d 957, 963-64 (2002), quoting Western Illinois Oil Co. v. Thompson, 26 Ill. 2d 287, 291 (1962). "If contract language is unambiguous, the intention of the parties must be ascertained by the language used, not by constructions urged by the parties." Nebel, 329 Ill. App. 3d at 964.

Regarding the consideration of a bonus by City Colleges, Hedlund stated the following in his August 11, 2000, letter:

> "While there would be no commitment to do so, we would hope
>
> that, at the conclusion of the litigation, City Colleges would give
>
> favorable consideration to a bonus request from my firm based
>
> upon results achieved, efficiency of our work at the hourly rates
>
> approved, and overall reasonableness."

12

The language used here is unambiguous; thus, the parties' intention will be determined from the words used. Accordingly, we find that City Colleges was under no obligation to consider a bonus request from plaintiffs, only that plaintiffs "hoped" that it would consider such a request. The decision of whether to consider the bonus request was discretionary, and the Board had no obligation under the agreement to consider that request. Therefore, we find the trial court properly granted summary judgment on this issue.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN and HALL, JJ., concur.